BOGGERO v. SOUTHERN RY.

1. PRESCRIPTION—WAYS—HARMLESS ERROR.—Although the jury were instructed as to the right to use a railway track as a walkway by prescription, which was raised neither by the pleadings nor evidence, still, as there are no reasonable grounds to suppose that the error effected the verdict, the judgment will not be reversed.

2. PLEADINGS—NEGLIGENCE—DAMAGES.—Under the act of 1898, 693, a plaintiff may allege without separate statement and prove acts of negligence and of wilful conduct, and recover on both.

3. NEGLIGENCE—CROSSINGS—SIGNALS.—EVIDENCE of failure to give signals required by statute on approaching a crossing is admissible to prove negligence in action against a railroad for accident happening at a point beyond such crossing.

4. SIGNALS—NEGLIGENCE.—CHARGE that if a railroad of ordinary care and prudence would give warnings at a particular place, then the defendant is required to give warnings, *held* to mean that defendant was required to give warnings if such was demanded in exercise of ordinary care.

5. RAILROADS—SPEED—RAILROAD COMMISSIONERS.—A MUNICIPALITY has the right to regulate the rate of speed of trains within its limits, and railroad commissioners cannot nullify such ordinance, nor have they exclusive jurisdiction in such matters.

6. IBID.—IBID.—PRESUMPTIONS.—Charge as to right that one walking on a railway track has to act upon the supposition that railroad will not violate ordinance as to rate of speed within the municipality, *held* to be correct when taken with whole charge.

7. LICENSE—TRESPASSER.—A RAILROAD owes a greater duty to one on its track by its consent or permission, than to a trespasser.

Before KLUGH, J., Greenwood, April, 1901.     Affirmed.

Action by Emiliano Boggero against Southern Railway Co. on the following complaint:

"The complaint of the plaintiff herein respectfully shows unto the Court:

"I. That the defendant is now and was at the times hereinafter named a corporation created by and under the laws of the State of Virginia.

"II. That the defendant is now and was at the times hereinafter named the owner of, and as such operates and has

control of the engines, cars and all other appurtenances and appliances belonging to or used on a certain line of railroad from Greenville, by way of and through Greenwood, to Columbia, all in the State of South Carolina, which said railroad is commonly known as and called the Columbia and Greenville Railroad.

"III. That the defendant's railroad track, after entering the town of Greenwood from the direction of Greenville, crosses over and intersects the railroad track of the Charleston and Western Carolina Railway Company, and from said point of intersection the tracks of said two railroads run almost parallel for a long distance, to and beyond their respective depots.

"IV. That in a less distance than 150 yards from the point of intersection aforesaid, the two said tracks cross a public street of the town of Greenwood near the home of C. G. Waller.

"V. That in a less distance than 150 yards from the point where the two said tracks cross the aforesaid public street, both of said tracks cross over the railroad track of the Seaboard Air Line Railway by means of a trestle or bridge over a deep cut or excavation made by the said Seaboard Air Line Railway at this point.

"VI. That in a less distance than 150 yards from the point where the two first mentioned railroad tracks cross over the said cut or excavation, the two said tracks, to wit: that of the defendant and that of the Charleston and Western Carolina Railway Company, again cross over another public street of the town of Greenwood, leading from the east to the west side of the public square of said town.

"VII. That on the east side of said two railroad tracks, and about fifteen or twenty yards therefrom, Logan street runs along almost parallel therewith from the public square of the said town of Greenwood over and beyond the cut or excavation made by the Seaboard Air Line Railway.

"VIII. That on the west side of said two railroad tracks, and about fifteen or twenty yards therefrom, another street

of the town of Greenwood, leading from west side of public square of said town, by the Oregon Hotel, the storeroom of Joel S. Bailey and others, runs along almost parallel with said two tracks to within a few feet of the said cut or excavation made by the Seaboard Air Line Railway, where the same ends.

"IX. That in front of the home of the said Joel S. Bailey, and at the terminus of the last named street, there is now and was at the times herein mentioned, and had been for a long time prior thereto, a well constructed plank walk which leads from the last mentioned street up to the track of the Charleston and Western Carolina Railway Company, and extends across its track to the track of the defendant herein, where the same is fastened to and the planks thereof nailed upon the crossties of defendant's track.

"X. That the said plank walk is about thirty yards from the cut or excavation hereinbefore mentioned, and on either side of said cut or excavation, and close thereto are well beaten footpaths leading to and from defendant's said track from and to Logan street, and between said footpaths and said plank walk or on the opposite side of said track therefrom, are no walks or paths or other evidences of travel leading from defendant's track.

"XI. That the plank walk and footpaths above mentioned are now, were at the times herein mentioned and have for a long time prior thereto, been continuously and generally used by the public and a great number of the citizens of Greenwood in going or returning to or from Logan street, at or near said cut or excavation and from all places beyond said cut or excavation, and on the west side of said railroad track, walk upon said track across said cut or excavation, where plank are also laid and fastened to the crossties of said track, until they reach the plank walk above mentioned, and the defendant has acquiesced in the use by the public of the said walk and along its track, and has knowledge thereof and has never made objection thereto, but has allowed, perhaps constructed and maintained, the plank walk leading

upon its track and fastened to the crossties thereof, and has thereby given the public permission to pass over its track to and from said plank walk from and to the said footpaths over and beyond the said cut or excavation.

"XII. That the said town of Greenwood has nearly 5,000 inhabitants, and the tracks of this defendant's railroad run almost through the centre of the said town, and it is very dangerous for a train to pass over the defendant's track at and between the points herein mentioned at a greater rate of speed than six miles per hour, and without ringing the bell or blowing the whistle of its engine, and without the constant watchout and care of its agents and servants in charge of its engine.

"XIII. That the town council of Greenwood on the 19th day of September, 1899, passed an ordinance of the said town, which has never been repealed or altered, whereby all railroad companies were prohibited from running their trains at a greater rate of speed than six miles per hour from the cut or excavation herein mentioned to their respective depots and beyond.

"XIV. That on the 13th day of April, 1901, at about 8:30 o'clock P. M., while the plaintiff was walking along the defendant's railroad track between the cut or excavation hereinabove mentioned and the plank walk above mentioned, and at or near the said plank walk, intending to cross over on the said plank walk to the street leading by and to the storeroom of Joel S. Bailey, an engine with two cars attached thereto, in charge of and operated by the agents and servants of the defendant, negligently, carelessly and without any signal or warning whatever, ran up behind him, at a rapid rate of speed, that is to say, at a greater speed than six miles per hour, in violation of the ordinance of the town of Greenwood and the laws of this State, and without ringing its bell or blowing its whistle, although defendant's agents knew or ought to have known that the citizens of Greenwood were constantly passing along its track at this place, and although its engine was in a less distance than 500 yards of a public

crossing, and was at the time passing over a place where
defendant had permitted the public to travel, and before this
plaintiff could step off of said track, the said engine struck
him, knocking him down, and passing over and upon both
his feet and legs, and so badly crushing and bruising them
that in order to save his life it became necessary to ampu-
tate both of said legs.

"XV. That by reason of the gross negligence, careless-
ness and wilful misconduct of the servants and agents of
the defendant in failing to ring its bell or blow its whistle,
in running its train at a dangerous rate of speed and in
violation of the laws of the town of Greenwood and the
laws of this State, in failing to keep the proper watchout,
and in failing to give this plaintiff any warning or signal
whatever of its approach, he has been damaged in the sum
of $1,990.

"Wherefore, plaintiff prays judgment against the defend-
ant company for the sum of $1,990, and the costs of this
action."

The defendant answered as follows:

"1. That it admits the truth of the statements contained
in paragraphs I., II., III. of the complaint.

"2. That it denies each and every other allegation con-
tained in the said complaint.

"3. The defendant alleges that the plaintiff had no legal
right to walk upon the track of the defendant; that plaintiff
was a trespasser, and the defendant owed him no duty except
to refrain from wilfully injuring him.

"4. That the plaintiff was walking, just before the acci-
dent, upon the side track of the defendant; that he heard
the defendant's train approaching, but, mistaking it for a
train upon the side track, he left said latter track without
looking around and stepped upon the defendant's track
immediately in front of the engine, and was struck before the
agents of defendant in charge of said train could prevent the
disaster.

"5. The defendant further alleges that the injury to plaintiff was brought about by his own negligence, and that by his negligence the plaintiff contributed thereto.

"Wherefore, the defendant demands that the complaint be dismissed with costs."

From judgment for plaintiff, defendant appeals.

*Mr. T. P. Cothran,* for appellant, cites: *Instruction as to law of prescription inapplicable:* 15 S. C., 95. *Rights by prescription and permission are at variance:* 1 Bail., 56, 341; 1 McM., 329; 19 Ency., 12; 22 L. R. A., 576. *Use must be exclusive and adverse:* 41 S. C., 21; 1 Bail., 56, 341; Dun., 92; Cheves, 1. *If there could be no grant, there could be no prescription:* 21 A. & E. R. R. Cas., 667; 19 Ency., 24; 4 B. and Ald., 578; 18 Wend., 9; 1 Flip. (U. S., C. C.), 129; 29 Pa. St., 287; 75 Fed., 737; 70 Ga., 207; 18 A. & E. R. R. Cas., 364; 51 Md., 115; 23 L. R. A., 267; Jones Eas., 232; 91 Cal., 631; 50 Cal., 265; 65 Cal., 435; 53 Cal., 450; 92 Cal., 414; 93 Cal., 51; 20 A. & E. R. R. Cas., 579; 21 A. & E. R. R. Cas., 665. *As to duty of railroad at points where persons are accustomed to pass over its track:* 15 A. & E. R. R. Cas., 591; 61 S. C., 556. *In action for ordinary negligence recovery cannot be had for wilful acts:* 18 A. & E. Ry. Ca. (N. S.), 231; 61 S. C., 170. *Duty of railroad to trespasser:* 18 A. & E. R. R. Cas., 229; 57 S. C., 243. *Railroad commissioners are only authority in this State which can regulate speed of trains:* Rev. Stat., 1630, 1633; 101 U. S., 814; 1 Will. Mun. Corp., sec. 317; 12 B. Mon., 25; 22 How., 422; 37 Me., 256; 12 Wall., 349; Dill. Mun. Corp., secs. 66, 89; 22 How., 422; 23 Pick., 71; 2 Dill. Mun. Corp., secs. 713, 727; 96 U. S., 521. *As to violation of ordinance by speed of train:* 18 A. & E. R. R. Cas., 689; 144 U. S., 408; 10 A. & E. R. R. Cas., 95; 8 *Id.,* 428. *Defendant does not assume burden of proof as to his explanation of circumstances attending accident:* 58 S. C., 491; 29 S. C., 96; 59 S. C., 535. *Licensee takes his license subject to con-*

*comitant perils:* 3 Elliott, sec. 1250; 61 Ry., 556.   *Plaintiff cannot rely on railroad obeying ordinan⸳⸳:* 30 S. C., 228; 49 S. C., 19.

*Messrs. Caldwell & Park, Johnstone, Welsh & McGhee,* contra.   *Messrs. Caldwell & Park* cite: *Charge as to right by prescription not error:* 31 S. C., 137; 29 S. C., 222; 40 S. C., 153; 55 S. C., 585.   *Failure to give signals on approaching crossing is proof of negligence in running train:* 16 L. R. A., 119; 51 Am. R., 718; 52 S. C., 223.   *Municipality has power to regulate speed within its limits:* 38 Ia., 120; 29 Ind., 252; 57 S. C., 211; 61 S. C., 558; 57 Ia., 555; 12 Mo. App., 25; 59 S. C., 109.   *As to what constitutes a license:* 46 Am. R., 667; 44 *Id.,* 377; 38 Ia., 539; 93 Am. R., 628; 57 S. C., 205; 61 S. C., 650.

April 21, 1902.   The opinion of the Court was delivered by

MR. JUSTICE GARY. . This is an action for damages alleged to have been sustained by the plaintiff through the negligence of the defendant in cutting off both his legs with its train of cars at Greenwood, S. C., on the 13th of April, 1900.   In order to understand clearly the facts out of which the controversy arose and the issues involved under the pleadings, it will be necessary to refer to the complaint and answer, which will be incorporated in the report of the case. The jury rendered a verdict in favor of the plaintiff for $1,200.

The defendant appealed upon exceptions, the first of which is as follows: "I.  The presiding Judge erred in charging the jury as follows: 'Now, persons may acquire the right to go upon the property of others by the public continually using or going upon such property, or openly and adversely, *i. e.,* in open opposition to any will or permission or license of the owner of the property, such going if continuous for a sufficient or long period to raise the presumption of law that such right does exist.   A man may

acquire the right to pass across the lands of another where he, in open violation, knowing that he is acting in open violation of the rights of the owner of the property, and where he does so with the knowledge, with notice to the owner that he is acting in open violation of the rights of the owner, or where he does so in such a notorious manner that the owner may be presumed to know that he is so violating his rights— if he does that as long as twenty years, the law will raise the presumption that he has the right to go there, and under those circumstances he would cease to be a trespasser, if he has established a prescriptive right, as it is called, to go upon or pass over the property of another; and that principle applies to the property of a railroad company, to its track, just as much as it does to the private lands of individuals.' The errors assigned being as follows: (1) The plaintiff made no claim in his complaint to a right by prescription to walk upon the track; the law declared by the Court was, therefore, inapplicable. (2) The complaint alleges permission by the defendant to the public to use its track. This is inconsistent with the idea of right by prescription, and for this reason, also, the law was inapplicable. (3) To constitute a prescriptive right to a way, the use must have been open, adverse, exclusive and accompanied by some act of the owner which shows a recognition on his part of the right of the claimant to use the way without his permission. The charge is not consistent with this proposition. (4) The use must have been adverse, and knowledge on the part of the owner that the use is adverse cannot be presumed from the notorious character of the use. The Circuit Judge, therefore, erred in charging the jury that a man may acquire the right to pass over the land of another 'where he does so in such a notorious manner that the owner may be presumed to know that he is violating his rights.' (5) There is no evidence showing that the use of the track as alleged in the complaint by the public was adverse to the right of the railway company, or that it was accompanied by such facts and circumstances as show that it was claimed as a right exercised

without the consent and in opposition to the rights of the railway company. The charge was, therefore, inapplicable and misleading. (6) A right to use the track of a railway company as a footpath cannot be acquired by prescription. (7) The right claimed by the plaintiff was to get upon the railway track, cross a trestle spanning a cut and continue down the track a distance of fifty yards to a certain foot bridge. Such right cannot be acquired by prescription, and there was no pleading or testimony making the charge applicable to the case. (8) Prescription rests upon presumption of a grant. A railroad being a public highway, it would be unlawful to grant the use of its track as a footpath. A presumption of an illegal act cannot be sustained." When the charge is considered in its entirety, it will be seen that it is very full and clear upon the issues raised by the pleadings. No question of a right by prescription was involved under the pleadings, nor was there any testimony whatever sustaining such right. In the exception it is stated that "there was no pleadings or testimony making the charge applicable to the case." The right by prescription is entirely separate and distinct from that set out in the complaint—one being founded upon an adverse and the other upon a permissive claim. Under these circumstances, even if there was error in the charge as to a prescriptive right, we do not feel justified in remanding the case for a new trial on this ground. Realizing that is is almost too much to expect that during the progress of a long trial, in which many questions were presented, errors will not be committed, the Court is not inclined to grant a new trial, unless it is satisfied that there is a reasonable ground for supposing the error may have effected the verdict, which it is not satisfied exists in this case.

The second exception is as follows: "II. The presiding Judge erred in charging the jury that the plaintiff would be entitled to a verdict if they came to the conclusion that the defendant wilfully inflicted injury upon the plaintiff. It is submitted that the action was based upon ordinary negligence, and that a recovery for a wilful tort

should not have been allowed." The complaint alleges both negligent and wilful misconduct on the part of the defendant. Sec. 2 of an act entitled "An act to regulate the practice in the Courts of this State in actions *ex delicto* for damages" (acts of 1898, page 693), is as follows: "That in all cases where two or more acts of negligence or other wrongs are set forth in the complaint, as causing or contributing to the injury for which such suit is brought, the party plaintiff in such suit shall not be required to state such several acts separately, nor shall such party be required to elect upon which he will go to trial, but shall be entitled to submit his whole case to the jury under the instruction of the Court, and to recover such damages as he has sustained, whether such damages arose from one or another or all of such acts or wrongs, alleged in the complaint." Under this act the plaintiff was entitled to recover damages both for negligence and wilful misconduct.

The third and fourth exceptions are as follows: "III. The accident is alleged to have happened as the plaintiff was walking down the track, at a point between two public street crossings in the city of Greenwood. It was error to have admitted evidence of a failure on defendant's part to give the statutory signals upon approaching these crossings. IV. The accident was alleged to have happened as the plaintiff was walking down the track, at a point between two public street crossings in the city of Greenwood. It was error to charge the jury that the defendant's failure to give the statutory signals upon approaching these crossings could be considered by the jury in determining whether the railway company exercised due care in giving signals or warnings of its approach to the plaintiff." The cases of *Mack* v. *R. R. Co.,* 52 S. C., 323, and *Mason* v. *R. R. Co.,* 58 S. C., 70, show that these exceptions cannot be sustained.

The fifth exception is as follows: "V. The presiding Judge erred in charging as follows: 'Now, therefore, if a railroad company of ordinary prudence and care would give

8—64

warning of its approach, at any point on its line, then this railroad company is required to give warning of its approach. The error consisting in this: (1) It eliminates the question of the plaintiff being a trespasser. (2) It makes the duty of the defendant in this particular case depend upon what a railroad of ordinary prudence and care should have done *at any point on its line,* a highway crossing, a crowded street, a crowded yard or elsewhere." 1. When this portion of the charge is considered in connection with the entire charge, it will be seen that it was full upon the question of the plaintiff being a trespasser. 2. His Honor simply intended to instruct the jury that the defendant was required to give warning of its approach, if such was demanded in the exercise of ordinary prudence.

The sixth exception is as follows: "VI. The presiding Judge erred in charging the jury as follows: 'If it failed to give warning of its approach, such warning as a railroad of average prudence and care would give, then it failed in its duty in this respect.' The error consisting in thus eliminating the question of the plaintiff being a trespasser on the track, and also the explanation of the defendant that the plaintiff was walking upon the side track and being misled by the headlight, stepped over on the main line immediately in front of the engine." The language set forth in the exception as the basis of the assignment of error must be considered with reference to the whole charge, by reference to which it will be seen, it is not amenable to the objection imputed to it.

The seventh exception is as follows: "VII. The presiding Judge erred in admitting in evidence the ordinance of the city of Greenwood limiting the speed of trains within a certain area, upon the ground that such ordinance is beyond the power of said municipality, the matter being exclusively within the jurisdiction of the board of railroad commissioners." The appellant relies upon sections 1630 and 1633 of the Revised Statutes, which are as fol-

lows: "Sec. 1630. The commissioners shall have the general supervision of all railroads and railways in this State operated by steam, and shall examine the same and keep themselves informed as to their condition and the manner in which they are operated, with reference to the security and accommodations of the public and the compliance of the several corporations with the provisions of their charters and the laws of the State; and the provisions of this charter shall apply to all railroads and railways, and to the corporations, trustees, receivers or others owning or operating the same." "Sec. 1633. Upon the complaint and application of the mayor and aldermen or council of any city or town, or board of county commissioners of any county within which any part of any such railroad is located, it shall be the duty of the commisisoners to make an examination of the condition and operation thereof. Before proceeding to make the examination in accordance with such application, they shall give to the applicants and the railroad corporation reasonable notice in writing of the time and place of entering upon the same. If upon such examination it shall appear to them that the complaint alleged by the applicant is well founded, they shall so adjudge, and shall inform the corporation operating such railroad of their adjudication in the same manner as is provided in sec. 1631 of this chapter; and the company failing for sixty days after such notice to remove the cause of such complaint, they shall make report thereof to the General Assembly for such action as it may deem expedient; or if there be necessity for prompt action, they may take such legal proceedings as may be proper and the attorney general shall institute and conduct such proceedings." The general principle is settled beyond controversy that a municipality has the power to pass an ordinance regulating the rate of speed of trains passing through its limits. These sections of the Revised Statutes do not confer upon the railroad commissioners power to nullify any law of the State, whether municipal or otherwise.

The eighth exception is as follows:

"VIII. The presiding Judge erred in charging the jury as follows: 'If you should conclude from the testimony that the city authorities of the city of Greenwood have prescribed a rate of speed beyond which the railroad company is forbidden to go in operating its trains in the city limits or in a particular part of the city, if you conclude that there is a city law to that effect, then if the testimony establishes that the railroad company did exceed the rate of speed prescribed by law, the railroad company violated its duty to obey that law. It is competent, as the Court has already held in your hearing, for the city authorities to establish such a law as that. We call these local laws of the municipal government, ordinances, but they have the force of law within the incorporate limits just the same as all other statutory enactments have, provided they are valid, not in violation of the law of the land, the law that is higher and that governs the city authorities as well as every other part of the land; and if the city prescribes a rate of speed which it has the power to do, and the railroad company exceeds that rate of speed, then it violates that law and violates its duty to obey that law.' The error consisting in this: By sec. 1630, Revised Statutes 1893, the supervision of all railroads in the State is committed to the railroad commissioners, especially as to the manner in which they are operated in reference to the security of the public. The regulation as to the speed of trains falls within the exclusive jurisdiction of said railroad commissioners, and not within the jurisdiction of the several municipalities of the State. By sec. 1633, by complaint and application by the mayor and council of any city touching the operation of any railroad within the incorporate limits, the railroad commissioners are directed to examine into the operation of said railroad, decide the matter and take such legal steps to enforce the determination as may be proper. For the same reasons, the presiding Judge erred in charging the plaintiff's eighth request. The ordinance is void, as an attempt to regulate the speed of trains at points where the pub-

lic have no right to be." This exception is disposed of by what was said in considering the seventh exception.

The ninth exception is as follows: "IX. The presiding Judge erred in charging the jury that every person in the city of Greenwood had the right to assume in his conduct and actions that every other person will obey the law and is acting in obedience to the law, and, therefore, if a person acting in violation of the law and some other person is injured because of that violation of the law, it becomes an act of negligence on the part of the violator of the law, and he is liable for whatever injury he may by that breach of duty occasion the other party. The error consisting in this: (1) The charge eliminates the question of contributory negligence. (2) It imposes an absolute liability upon the defendant in case the jury found that the defendant was violating the ordinance as to speed. (3) If plaintiff were a trespasser, he could not claim the benefit of the ordinance fixing the speed." When this portion of the charge is considered in connection with the entire charge, it will be found free from the errors assigned.

The tenth exception is as follows: "X. The presiding Judge erred in charging the jury that the burden was upon the defendant to establish by the preponderance of the evidence the allegation of the answer that the plaintiff 'was walking upon one railroad track, and hearing the train approaching behind him, by some mistake supposed that he was upon the track in the way of the train, crossed over to another track, and that that crossing over was what brought him into the position of danger, and what brought on the injury by his getting in front of the engine, immediately in front of it, and so near that the persons in charge of the engine and train did not have time to stop the train before it caused the injury.' The error consisting in this: The allegation in the answer was explanatory of how the accident occurred. It was not an affirmative defense. The burden of proving negligence throughout was upon the plaintiff, and the burden is not shifted when the defendant undertakes to

explain the circumstances of the accident." That portion of the charge relative to this question was as follows: "The railroad company answers the complaint, and denies that he is entitled to any recovery against the railroad, and further alleges affirmatively that the plaintiff had no legal right to walk upon the track of the defendant, and that the defendant owed him no duty except to refrain from wilful conduct; and further alleges that the plaintiff just before the injury or accident, was walking upon another track; that he heard the defendant's train approaching, and mistaking it for a train upon the track on which he was walking, left that track without looking around, and stepped upon defendant's track immediately in front of the engine, before the agents of the defendant in charge of the train could prevent the disaster; and alleges further that the injury to the plaintiff was brought about by his own negligence and by his contributory negligence. Now, the denial by the defendant of any right in plaintiff to recover, first of all, puts the burden upon the plaintiff of proving the facts that he alleges here as entitling him to recover. He must prove that he was on the track with the permission, as he alleges, of the railroad company, and he must prove that the railroad company was negligent in the particular in which he alleges that it was negligent, and he must prove that that negligence in those particulars, one or more of those particulars, was the cause of his injury. He must prove those facts by the preponderance or greater weight of the testimony; and if he proves those facts by that degree of proof and further establishes the fact that he was injured, he is entitled to a verdict at the hands of this jury, unless the defendant establishes by proof something by way of affirmative allegation or defense which would defeat his right to recover." It will thus be seen that the exception is founded upon a misapprehension of the charge.

The eleventh exception is as follows: "XI. The presiding Judge erred in charging the plaintiff's third request to charge as follows: 'A person on the railroad track with the consent or permission of the railroad company is not a trespasser,

and is entitled to reasonable care on the part of persons running the trains of such railroad.' For the reason: Under such circumstances the plaintiff would be a licensee, and the rule of law is that the licensee takes his license subject to the concomitant perils, and the licensor owes him no duty except to refrain from wilfully or wantonly injuring him." A railroad company owes even to a trespasser the duty to refrain from wilfully or wantonly injuring him; it owes a greater duty to one on the railroad track with the consent or permission of the railroad company.

The twelfth exception is as follows: "XII. The presiding Judge erred in charging the plaintiff's eighth request to charge as follows: 'An ordinance of a town forbidding railroad trains to run beyond a rate of speed fixed by the ordinance makes it the legal duty of a railroad company to regulate the speed of trains within the limits of such town accordingly. A railroad company violating such an ordinance is guilty of negligence; and a traveler going upon the track within the area for which such limit of speed is prescribed is not necessarily negligent, if not otherwise at fault, if he relies upon the prescribed rate of speed being used by the railroad trains, though going upon the track at another place than a street or highway crossing.' For the following reasons: (1) For the reasons stated in exception VIII. (2) The city council of Greenwood has no control of defendant's trains except at street crossings. (3) The plaintiff had no right to rely upon the prescribed rule of speed being used, but was obliged to use his senses to avoid a possible infraction of the rule. (4) If plaintiff were a trespasser, he could not claim the benefit of the ordinance." This exception is disposed of by what was said in considering the other exceptions.

Judgment affirmed.

MR. CHIEF JUSTICE McIVER *dissents.*