### STATE v. MARKS.

1. PRACTICE—NEW TRIAL—REFEREE.—THIS COURT has power to appoint a referee to take the evidence of a party who declines to make an affidavit to be used in a motion to suspend appeal in a criminal case and for leave to make motion for new trial on after-discovered evidence.

2. NEW TRIAL.—Such motion will not be granted on evidence tending to show that a witness has been discovered to whom a witness for State had made a statement contradictory to his evidence.

3. WITNESS—CONTRADICTION.—The witness sought to be contradicted here was sufficiently apprized of the time, place and person to whom he is said to have made the statement.

4. EVIDENCE in a homicide case tending to show the conduct of defendant, and that he intended to resist arrest, is competent.

5. IBID.—CONSPIRACY—NEW TRIAL.—That a defendant said to his co-defendant, after a homicide, not to run, and that he attempted to make his escape with him, is not sufficient to furnish a legal inference of a conspiracy between them, and new trial is granted as to that one.

Before ALDRICH, J., Darlington, September term, 1904. Reversed as to one defendant.

Indictment against Sam Marks and Moses Ham. From sentence, both defendants appeal.

*Mr. George W. Brown,* for appellant.

*Solicitor J. M. Johnson,* contra.

February 4, 1905. The opinion of the Court on the motion to suspend appeal and for leave to make motion below for new trial on after-discovered evidence was delivered by

MR. JUSTICE JONES. This is a motion to suspend the appeal in this case in order that a motion for a new trial on after-discovered evidence may be made in the Circuit Court, and to this end, it is further moved that this Court appoint a referee to take the testimony of W. D. Blackman, who declines to make an affidavit.

While we do not doubt that this Court has the power to appoint a referee to take the testimony of W. D. Blackman in these proceedings, we think it would be useless to exercise the power in this case, since the testimony, if procured as desired by appellants, would not contribute anything in making out the *prima facie* showing necessary to cause a suspension of the appeal for the purpose named. It will be noticed that the testimony of W. D. Blackman would only be made available on a subsequent trial to impeach the testimony of Wylie McKissick, a witness examined on behalf of the State (in the event he should be again used by the State as a witness), by showing that he made statements inconsistent with his testimony on the stand. Whether the deceased had a knife in his hand during the difficulty with the defendants, was strenuously contested on the trial, and to reopen that matter, merely because some one has been discovered who has heard

29—70

one of the State's witnesses make statements contradictory of his testimony on the trial, would establish a dangerous precedent. In denying a motion made on a similar ground, in *State* v. *Workman,* 38 S. C., 550, 16 S. E., 770, the Court said: "If such a ground be held sufficient to sustain a motion like this, it would be opening the door to fraud and perjury, and cause interminable delay in the trial of causes."

For these reasons, we think the motion to suspend appeal should be refused, and that the Court should proceed to consider the appeal which has been heard, and is ready for determination upon refusal of this motion, and it is so adjudged.

MESSRS. CHIEF JUSTICE POPE *and* JUSTICE WOODS *concur*.

### DISSENTING OPINION.

MR. JUSTICE GARY, *dissenting*. This is a motion upon affidavits hereinafter mentioned for an order: "1st, suspending the appeal in the above stated case; 2d, appointing a referee to take the affidavit of W. D. Blackman, as disclosed in this motion; 3d, allowing the defendants to make a motion at the next term of the Court of General Sessions for Darlington County, for an order granting a new trial in the said case on after-discovered evidence."

The affidavit of Mr. J. R. Coggeshall is as follows: "Personally appeared before me, J. R. Coggeshall, who being duly sworn, says that a few days after the adjournment of the September term of the Court of General Sessions for Darlington County, at which Sam Marks and Mose Ham were tried for murder, deponent met W. D. Blackman on the public square of the town of Darlington, S. C.; that the said W. D. Blackman mentioned the trial of Marks and Ham, and said in substance that he supposed it was all over with, but that he was afraid the witnesses did not tell all about that knife; that he had heard Wiley McKissick talking with Raines at his house only a short time after Langston

was killed, and that McKissick said they could say what they pleased about the knife, but that he was satisfied that Langston must have had his knife in his hand when he was killed, as only a short time afterwards he picked the knife up 'about the hole,' and shut it up and put it in his pocket. Deponent having heard that it was denied on the witness stand that Langston had a knife, mentioned what he had heard to Geo. W. Brown, and, at his request, asked Mr. Blackman if he would make an affidavit as to what he heard McKissick say with regard to the knife picked up after Langston was killed, and Mr. Blackman said he preferred not making an affidavit, but would see Mr. Brown about the matter."

The affidavit of Mr. George W. Brown, attorney for the defendants, sets forth the fact that the testimony was not discovered before the trial, and could not have been discovered by the use of due diligence, as there were no circumstances putting the defendants or their attorney upon inquiry; also that when requested by him to make an affidavit, the said Blackman refused to do so.

Section 75 of the Criminal Code provides that "the practice and proceedings in cases of appeal from the Courts of General Sessions shall conform to the practice and proceedings in cases of appeal from the Courts of Common Pleas." Section 402, subdivision 7, of the Code of Procedure is as follows: "When any party intends to make or oppose a motion in any court of record, and it shall be necessary for him to have the affidavit of any person who shall have refused to make the same, such court, or a judge thereof, may, by order, appoint a referee to take the affidavit or deposition of such person. Such person may be subpœnaed and compelled to attend and make an affidavit before such referee, the same as before a referee to whom it is referred to try an issue. And the fees of such referee for such service shall be three dollars per day." The Court unquestionably has the power to appoint a referee to take the affidavit of W. D. Blackman.

Before determining whether the appeal should be suspended for the purpose of enabling the defendants to make a motion in the Circuit Court for a new trial on the ground of newly-discovered evidence, I desire to have before me the affidavit of W. D. Blackman. I think it should, therefore, be adjudged, that the master for Darlington County be appointed referee to take the affidavit of W. D. Blackman, and that he forward the same to this Court; and that it should be further adjudged, that W. D. Blackman make the affidavit before said referee.

For these reasons I dissent from the conclusion announced in the opinion of Mr. Justice Jones.

February 15, 1905. The opinion of the Court in the appeal on the merits was delivered by

MR. JUSTICE GARY. The defendants were indicted for the murder of Hill Langston, and the jury rendered the following verdict: "Guilty as to both defendants, with a recommendation to mercy as to Moses Ham."

The appellants' first ground of appeal is as follows: "Because his Honor erred in permitting the witness, J. J. Parrott, sr., a witness for the State, to testify, against the objection of the defendants, as follows: Q. 'You heard me ask Hamp Douglass if he did not tell you, at or near the mill a short time after the killing, that Langston did not have anything in his hand when Sam struck him. Is that true or not?' A. 'Yes, sir; he told me he didn't have anything in his hand.' Q. 'Didn't he also tell you that Mose said, Sam, don't run?' A. 'Yes, sir, he did; the other nigger heard it. Put him on the stand, he will say he told me so. Park Kelly was right there, there were two of us.' It being respectfully submitted that as the testimony was adduced for the purpose of contradicting Hamp Douglass, the time and place of the alleged declarations were not sufficiently fixed, and the witness, Hamp Douglass, was not sufficiently advertised." In order to lay the foundation for

the contradiction of a witness, it is necessary that he should be apprized of the time, place and person to whom it is contended he made the statement. There was a compliance with these requirements in this case.

The second and third exceptions are as follows: "2. Because his Honor erred in permitting Robert Scarborough, a witness for the State, to testify, against the objection of defendant, as follows: Q. 'When you went to arrest Sam, did or not he make a dash at you or advance on you?' Objected to. Objection overruled. Exception noted. Q. 'Did he or not?' A. 'He made a dash at me twice.' Q. 'What did you do?' A. 'I drew my pistol and told him if he came on me I would shoot him.' It being submitted that the testimony was incompetent, in that it had no relation to and was not pertinent to the issue before the Court, and could have been brought out by the State for no other purpose than to prejudice the minds of the jury against the defendants, and was an indirect and illegitimate mode of attack upon the character of the defendants, when the defendants had not opened the door to proofs of character.

"3. Because his Honor erred in permitting the State, against the objection of defendants, on the cross-examination of the defendant, Sam Marks, to bring out the following testimony: Q. 'Didn't you tell Moses' father to look out for the sheriff, or words to that effect, as soon as he came you intended to run into him and take his pistol away from him and shoot him?' A. 'No, sir.' Objected to as irrelevant. Q. 'Didn't you, after the killing, on the same day, at Moses' father's house, tell him to look out for the sheriff, as you intended when he came to run into him and get his pistol and shoot him?' A. 'No, sir.' Objected to. It being submitted that the testimony was incompetent, and was an indirect mode on the part of the State to attack the character of the defendants, when their characters had not been put in issue, and such testimony was calculated to unduly prejudice the minds of the jury and prevent a fair trial of the case." The

testimony related to the conduct of the defendant after the homicide, and tended to show an intention on his part to resist arrest. The testimony was, therefore, competent.

The fourth exception is as follows:

"4. Because there was absolutely no evidence to support the verdict of the jury." There was testimony tending to support the verdict of the jury as to Sam Marks, but not as to Moses Ham. The only testimony against Moses Ham was that he called out to Sam Marks, after the homicide, not to run, and that he attempted to make his escape with Sam Marks. These facts are not sufficient to furnish a legal inference of a conspiracy between the defendants.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed as to Sam Marks, and that the case be remanded to that Court for the purpose of having another day assigned for carrying into effect the sentence of the Court; and that as to Moses Ham, the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.