16846

STATE v. CLAMP

(80 S. E. (2d) 918)

*Messrs. Harold Major,* of Anderson, and *R. B. Hilde-brand,* of York, *for Appellant,*

*Messrs. Rufas Fant, Solicitor,* and *John C. Watkins,* of
Anderson, *for Respondent,*

March 16, 1954.

T. B. GRENEKER, Acting Associate Justice.

The indictment which was returned against the appellant
by the Grand Jury of Anderson County on the 2nd Monday
in May, 1952 contained two counts: 1st, burglary; 2nd,
armed robbery, the date of the alleged crimes being April 5,
1952. Upon this indictment the appellant was tried on Feb-
ruary 17, 1953 before a jury in the Court of General Ses-
sions for Anderson County, with Honorable Steve C. Grif-
fith presiding, and was convicted on both counts with a
recommendation to the mercy of the court. Appellant's mo-
tion for a new trial, the grounds of which were not stated in
the transcript, was refused, and he was thereafter sentenced
to a term of five years on each count, the sentences to run
consecutively. The appellant now comes to this Court upon
four exceptions. The fifth exception set out in the transcript
was abandoned. The exceptions are considered seriatim.

Prior to the argument of the main appeal, a motion to
suspend the appeal was made in order that the appellant may
be permitted to move in the circuit court for a new trial on
after-discovered evidence, and to this end affidavits on be-

half of the appellant and counter affidavits by the State were, with the briefs of the parties, presented and oral arguments made. It necessarily follows that this motion must first be considered.

After a very careful study of the affidavits submitted by the appellant, as well as the affidavits used in resisting the motion, and a review of the entire transcript of record, we think that the question presented for determination is : would the alleged new or after-discovered evidence, if procured as desired by the appellant, be sufficient to make out the *prima facie* showing necessary to cause a suspension of the appeal for the purpose named, and does the showing made by the appellant measure up to that standard required in such cases as set forth in *State v. Jones*, 185 S. C. 274, 194 S. E. 11; 20 R. C. L. 290?

If a new trial were granted in this case and appellant's affidavits taken at full value, we must conclude that the witness Bobbie Thrasher would testify that she came to the Tucker home during the robbery along with King and Doris Sloan, that she saw the two robbers, observed them and in her judgment Clamp was not there and "neither of them fitted the description of Julian Clamp." This is the substance of what appellant contends Bobbie Thrasher would testify. Clamp also set forth in his affidavit that he had contacted Doris Sloan and that her testimony would be "in substance the same as that of Bobbie Thrasher."

Counter affidavits are in the record; one by Doris Sloan, who says that she was not at the preliminary, denies that she has been contacted by appellant, that she had not seen Clamp since the night of the robbery, they were all nervous "and Mrs. Thrasher was hysterical, screaming and crying, I did not know either of the robbers and doubt if I could identify them." She further states that Mrs. Thrasher, her sister, asked her to "sign a paper" stating that Clamp was not one of the robbers, and that she could not do so as she did not know if Clamp was one of them. The counter affidavit of

Cecil King sets forth that he is a brother-in-law of Doris Sloan and Bobbie Thrasher, that neither of them was at the preliminary and that Heyward Thrasher, husband of Bobbie Thrasher, offered him seventy-five dollars to change his testimony. There is also the affidavit of the Sheriff of Anderson County who stated that neither Doris Sloan nor Bobbie Thrasher was present at the preliminary and that as far as his office was concerned neither was served with a summons to be there.

Considering all of the affidavits and the entire record, as we must, may we conclude therefrom that the appellant has brought himself within the requirements of the law so clearly set forth in *State v. Strickland,* 201 S. C. 170, 22 S. E. (2d) 417, 418? The holding was:

"In order to warrant the granting of a new trial on the ground of after discovered evidence it must appear, (1) That the evidence is such as will probably change the result if a new trial is granted. (2) That it has been discovered since the trial. (3) That it could not have been discovered before the trial by the exercise of due diligence. (4) That it is material to the issue. (5) That it is not merely cumulative or impeaching."

Appellant says in his affidavit that "he saw present at the preliminary hearing two young women, Mrs. Heyward Thrasher (Bobbie Carolina Thrasher) and Mrs. Doris Sloan * * *" and referring to Cecil King, "this witness testified at the Preliminary Hearing that these two young women heretofore referred to were with him when he went to Miss Tucker's home on the night of April 5, 1952." It is therefore clearly apparent that appellant knew on August 7, 1952, the date of the preliminary, that these two women were at the home of Miss Tucker on the night of the robbery. Neither of the women testified at the preliminary. The indictment was returned on the 2nd Monday in May, 1952; he was tried on February 17, 1953, *approximately nine months after the indictment, and more than six months after*

*the preliminary.* When appellant was tried, he knew that these women were not going to be called as witnesses for the state for the reason that in his presence and in the presence of his able and experienced counsel, upon motion of the defense, all witnesses were segregated. It was certainly known then that the two women would not be used as witnesses for the state. We know of no reason why the witnesses Thrasher and Sloan could not have been interviewed at this time or at any other time since the date of the robbery. The record is silent as to any action taken by appellant until the affidavit of Bobbie Thrasher was made on August 4, 1953, *nearly six months after trial.* The contents of this affidavit, so far as the record reveals, were kept entirely within the knowledge of appellant *until January 4, 1954, nearly a year after his trial.* We think it rather clear that appellant contends he is entitled to a new trial so that he could have the testimony of Bobbie Thrasher and Doris Sloan (if she would so testify) to strengthen his defense of alibi. On this question Miss Tucker, the victim of the robbery, testified that the robbery was committed "between eight and eight-thirty", while at least three witnesses for the defense testified that appellant was at his boarding house all of the evening of April 5, 1952. The "whereabouts" or "identification" of the appellant are not new questions raised by this motion, as both his identification and whereabouts were at issue in the trial and were decided by the jury adversely to him.

It has been repeatedly held by this Court that denial of new trial for after-discovered evidence, which tended only to impeach state's witness or corroborate testimony in support of plea of alibi, is not error. *State v. Pittman,* 137 S. C. 75, 134 S. E. 514.

There are, of course, cases in which motions of this kind should be entertained and granted in order that wrongs done may be corrected, but as a rule the courts do not look with favor upon motions of this charac-

ter, as there must be an end to litigation in any case. *State v. Augustine*, 131 S. C. 21, 126 S. E. 759.

It is also true that the rule is well settled that a motion for a new trial on the ground of after-discovered evidence is addressed to the sound discretion of the trial court and will not be reviewed unless there is abuse of that discretion or that the decision was influenced by an error of law. *State v. Jones*, 89 S. C. 41, 51, 71 S. E. 291, and other cases cited in *State v. Augustine, supra.*

In *State v. Marks*, 70 S. C. 448, 50 S. E. 14, 15, where a similar motion was before the Court, we find the following:

"Whether the deceased had a knife in his hand during the difficulty with the defendants was strenuously contested on the trial, and to reopen that matter, merely because some one has been discovered who has heard one of the state's witnesses make statements contradictory of his testimony on the trial, would establish a dangerous precedent." And, "If such a ground be held sufficient to sustain a motion like this, it would be opening the door to fraud and perjury, and cause interminable delay in the trial of causes."

A reading of the affidavit of Cecil King clearly demonstrates that the application of the last quoted holding to the present case is obvious. And although King names Heyward Thrasher, the husband of Bobbie Thrasher, as the party who made this improper offer to him, we find no contradiction in the record by the person so named as to the contents of that affidavit.

We see no reason to hold that the alleged newly discovered evidence would probably change the result if a new trial were granted, and this in itself would be a sufficient reason for the refusal of appellant's motion, aside from what has been said above. And it should also be kept in mind that the alleged crimes were committed on April 5, 1952, the case was tried on February 17, 1953, and that this motion was first presented in January, 1954. It therefore seems apparent that the requirement of due dili-

gence has not been complied with, and that the appellant has not brought himself within the requirements of the holdings of this Court relative to such motions.

Appellant's motion to be permitted to move in the circuit court for a new trial is accordingly refused.

We now consider the main appeal.

## Exception 1

"That the Court erred in that it charged on the facts when it undertook to define the crime of burglary in that it charged the jury as follows: 'The walking into an open door would not be a breaking, but the mere opening of an unlatched door, or the mere opening of an unlatched screen door is a sufficient breaking under the law.' When the testimony of the prosecuting witness, Miss Faustina Tucker, was to the effect that the porch of her home was screened, and that the persons, who entered her home, made an entry through a screen door, which was latched, the entry being made by tearing the screen and reaching in and unlatching the screen door."

The appellant complains that the following language, used by the trial judge in his charge, was a charge on the facts:

"The walking into an open door would not be a breaking, but the mere opening of an unlatched door, or the mere opening of an unlatched screen door is a sufficient breaking under the law."

He contends that this charge, taken in connection with the testimony of Miss Faustina Tucker, infringed upon the facts. It is therefore necessary to review this part of the judge's charge to ascertain just what was said, for it has been repeatedly held by this Court, and no citation of authority is needed, that in order to determine whether a trial judge committed error in his charge, the charge must be considered as a whole. On this point, the judge charged the jury as follows:

"Now, burglary is defined as the breaking and entering of the dwelling house of another, in the night-time, with the intent to commit a felony therein, whether the felony is committed or not. Now, to make out that offense, the state has first got to prove a breaking. Now, no particular amount of force is necessary to constitute a breaking, but there must be some force. The walking into an open door would not be a breaking, but the mere opening of an unlatched door, or the mere opening of an unlatched screen door, is a sufficient breaking under the law. Secondly, the state must prove that there was an entering, that is, the person charged actually went inside of the house, or some part thereof. The third element is, that the house that was broken and entered was a dwelling house, it is a place where some person lived, and that that house the house of another, the person named in the indictment is the owner thereof; that the breaking and entering was done in the night-time, and not in the day-time, and the breaking and entering was done with the intent to commit a felony, a crime, after getting inside."

In charging the jury, the judge is not compelled to define a criminal offense in the very words of elementary writers. *State v. Clary*, 24 S. C. 116. Under the law, "the mere opening of an unlatched door or the mere opening of an unlatched screen door" is a sufficient breaking. A screen door, whether latched or unlatched, as long as it is a part of the enclosure, is a part of the dwelling, and it cannot be said that this door was put there merely to keep out flies and mosquitoes. In our opinion, that part of the charge complained of did not infringe upon the facts. It was nothing more than a statement or definition of "breaking", which is one of the essential elements of the crime of burglary. Whether or not there was a breaking would depend upon what the jury found the facts to be.

Stating a legal conclusion which would result if the jury found certain facts is not a charge on the facts. *Kean v. Landrum*, 72 S. C. 556, 52 S. E. 421.

A breaking essential to constitute the crime of burglary, may be any act of physical force, however slight, whereby any obstruction to entering is forcibly removed. It does not require violent or mechanical force to constitute a burglarious breaking. Opening a window, picking a lock, or opening a door with a key is sufficient. If any force be required and employed to remove or displace that which has been placed there to close the opening, this is enough. *State v. Chappell,* 185 S. C. 111, 193 S. E. 924; *State v. Bee,* 29 S. C. 81, 6 S. E. 911; Annotation, 139 Am. St. Rep. 1046; *State v. Maxey,* 218 S. C. 106, 62 S. E. (2d) 100.

A review of the charge fails to reveal any instance where the judge expressed or even intimated any opinion which he may have had as to who, if anyone, broke and entered the dwelling of Miss Tucker. We find no merit in this exception.

## Exception 2

"That the Court erred in charging the jury as follows: 'And one of the unfortunate things of the jury system is to have a jury or juror, who knows it all. The type of man who goes into the jury room and says, "now when you get ready to decide this case like I see it, we will decide it, if not we will stay here until we are turned out".' In that this was misleading and prejudicial to the Defendant in that it intended to impress upon the individual jurors, that irrespective of their convictions about and governing the law and the testimony in the case, they should reach a verdict, in spite of their own individual convictions, and was highly prejudicial to cause of the Defendant."

In considering this exception, it is necessary to, repeat that the charge must be considered as a whole.

If the bald statement about which the appellant complains were all that the judge said on the subject, it may be that some question would arise, but such is not the case. On the contrary, the part of the charge complained of, as set out

in the exception, has its beginning in the middle of a sentence contained in the charge. The judge charged as follows:

"Now, one more thing. The law requires that twelve men shall sit on a jury, and the reason it requires twelve men is that it wants to combine judgment of twelve men. It realizes that there is more wisdom, there is more good common sense, and there is better judgment in twelve men that any one man, and one of the unfortunate things of the jury system is to have a jury, or juror, who knows it all. The type of man who walks into a jury room and says, 'now, when you get ready to decide this case like I see it, we will decide it, if not we will stay here until we are turned out.' Now, I don't want any man on this jury to surrender any conscientious thing, but that is an entirely different thing from knowing it all. What I want you to do, and what your State expects you to do, is to go into your jury room, combine your judgment, reason with your fellow juror, and working together find out what is right in this case."

In further support of the soundness of the charge, we quote from *Nelson v. Atlantic Coast Line Railway Co.,* 191 S. C. 345, at page 358, 4 S. E. (2d) 273, at page 278, the approved charge of the late Judge Sease, when he said to the jury:

"If one man on the jury or more thinks that he knows it all, and would not yield his pride of opinion to reach a proper verdict he is no fit man to be on the jury. There is no one man that knows it all. In a jury room you listen and weigh the contentions of your fellow jurors in a spirit of trying to reach a conclusion."

The tenor of the language used there is much more arresting than that complained of by the appellant.

We think the entire charge and context clearly indicate that nothing was said by the trial judge which was misleading or prejudicial to the appellant but, on the contrary, after stating,

"Now, I don't want any man on this jury to surrender any conscientious thing, but that is an entirely different thing from knowing it all,"

the judge, in closing, said,

"What I want you to do, and what your State wants you to do, is to go into your jury room, combine your judgment, reason with your fellow juror, and working together find out what is right in this case."

This exception cannot be sustained.

### Exception 3

"That the state failed to prove or offer any testimony as to the ownership of the premises charged to have been broken and entered in the night-time with the intent to commit a felony, and, therefore, failed to prove one of the essential elements in the charge of burglary."

Burglary is the breaking and entering of a dwelling house of another in the night time, with a view to commit a felony. The appellant contends that the state failed to offer any testimony as to the ownership of the premises charged to have been broken and entered. The following testimony is found in the direct examination of Miss Tucker:

"Q. I believe your name is Miss Faustina Tucker? A. Yes, sir.

Q. Where do you live, Miss Tucker? A. Anderson, S. C., Route 1.

Q. About how far is that from the City of Anderson? A. About seven or eight miles.

Q. Is that or not in Anderson County? A. Yes, sir.

Q. And what road is that on? A. It is the old Greenville road.

Q. The old Durham Bridge road? A. It goes to Greenville.

Q. And in going from here to your house, going to Greenville, do you live on the left or the right of the old Greenville road? A. It is on the left.

Q. I believe the house sets back from the road some? A. Yes, and there is a road from my house to the old Greenville road.

Q. And state whether or not there is a road or drive-in to your house by the well there? A. Yes, sir, when you drive up in the yard you drive up by the well.

Q. Do you live there alone, Miss Tucker? A. Yes, sir.

Q. And were you living at this place on April 5th of last year? A. Yes, sir."

From this testimony it is clearly apparent that there was evidence that the house alleged to have been broken and entered was the home of Miss Faustina Tucker. However, burglary is a crime against possession and not against property. *State v. Copeland,* 46 S. C. 13, 23 S. E. 980; *State v. Alford,* 142 S. C. 43, 140 S. E. 261. Although the indictment in its entirety is not before the Court, appellant contends that the indictment charged ownership of the premises to be in Miss Tucker and that there was no testimony to establish this. The record does not support this contention of the appellant. Certainly the evidence is overwhelming that Miss Faustina Tucker was the occupant of the house and the victim of the alleged crimes while in that house. And in her testimony she refers to the residence as "my house". It is interesting to note during the examination of appellant by his own counsel, the following questions and answers:

"Q. Do you know Miss Tucker? A. I didn't know her until I saw her in the court room, and down at the jail. I told her she was all mixed up.

Q. Have you ever been to her home out here on the old Greenville road? A. I have never been in her home."

Here even the appellant spoke of the house alleged to have been entered as "her home", and this could only have referred to Miss Tucker.

In connection with this exception, we find, in the old case of *State v. Trapp,* 17 S. C. 467, where the opinion was

written by the last Justice McIver and decided in 1882, the following interesting holdings:

"So far as we can perceive, there are only two reasons for requiring the ownership of the house to be stated in an indictment for burglary: 1st. For the purpose of showing on the record that the house alleged to have been broken into, was not the dwelling house of the accused, inasmuch as one cannot commit the offence of burglary by breaking into his own house. 2d. For the purpose of so identifying the offence, as to protect the accused from a second prosecution for the same offence. Hence when the ownership is alleged to be in a person who is not the accused, and that allegation is proved upon the trial, the reasons of this requirement seem to be fully met."

We see no reason for sustaining this exception.

### Exception 4

"That the verdict of the jury was contrary to the greater weight of the evidence and the preponderance of the evidence."

In considering this exception, it should be kept in mind that after appellant's conviction there was a motion for a new trial, which was refused. The granting of a new trial rests in the discretion of a trial judge. *State v. Hayes,* 69 S. C. 295, 48 S. E. 251.

It is also well-settled that the weight and sufficiency of the evidence is for the jury. It is therefore the province of that body to weigh the evidence and decide on its sufficiency in reaching a verdict. *State v. Heyward,* 197 S. C. 371, 15 S. E. (2d) 669. Where there is any evidence tending to establish guilt on charges alleged, neither a refusal to direct a verdict for acquittal nor a refusal to grant a new trial is an error of law. *State v. Rush,* 129 S. C. 43, 123 S. E. 765.

Under the well-settled rule, unless there was a total failure of competent evidence tending to establish the charge laid

in the indictment, the trial court's rulings upon motions of this character may not be impeached for error of law. *State v. Roddey*, 126 S. C. 499, 120 S. E. 359.

There is no question as to the law involved, and it only becomes necessary to ascertain from the transcript whether or not there was evidence to be submitted for the jury to pass upon. Miss Tucker, whose home was broken into and who was robbed, saw and talked with the robbers at her home and had ample time to observe the appellant while in the act for which he was convicted. The witness King, who came to the home of Miss Tucker while the robbery was being executed, saw and had opportunity to observe the appellant at the scene of the crimes. Both King and Miss Tucker identified the appellant as being one of the robbers. The witness Jennings testified that in talking to the appellant that the appellant, while talking about other robberies, told him that he and one other committed the Tucker robbery.

The credibility of the witnesses and what weight shall be given to any testimony is of course entirely within the province of the jury. The record reveals that there was abundant testimony upon which a conviction could have been found, and the jury having found the defendant guilty, we cannot, in the light of the record, say as a matter of law that this exception should be sustained.

All of appellant's exceptions are overruled and his appeal dismissed.

BAKER, C. J., and STUKES, TAYLOR and OXNER, JJ., concur.