## 17285

THE STATE, Respondent, v. WILLIE MARION DANIELS, Appellant

(97 S. E. (2d) 902)

*Messrs. Fred L. Hiers,* of Allendale, and *Sol Blatt, Jr.,* of Barnwell, *for Appellant,*

*Messrs. Randolph Murdaugh, Solicitor,* of Hampton, and *McNair & Lawton,* of Allendale, *for Respondent,*

April 29, 1957.

Moss, Justice.

At the 1956 April term of the Court of General Sessions for Allendale County, South Carolina, the appellant, Willie Marion Daniels, was indicted under separate indictments for rape and burglary, which alleged crimes occurred on the night of February 25, 1956.

At the said term of Court, when the case was called for trial, the appellant had not retained counsel to represent him, and the Court appointed able and competent attorneys to appear and represent the appellant. The appellant, through his counsel, made a motion that he be sent to the South Carolina State Hospital for examination as to his mental soundness. The South Carolina State Hospital found no evidence of insanity and that the appellant was functioning at an intellectual level average for his age, race and educational opportunities.

At the 1956 June term of the Court of General Sessions for Allendale County, the case charging the appellant with rape was called for trial. When the rape case was called for trial, the appellant, through his counsel, advised the Court that he wished to plead guilty of the indictment charging him with burglary, which plea would have automatically carried with it a sentence of life imprisonment. However, the State refused to accept the plea in the burglary case and insisted upon the trial of the appellant upon the charge of rape. The Court was advised by counsel for the appellant

that whenever he was called upon to answer the burglary indictment, that he would plead guilty to such.

The trial of the appellant for the rape of the prosecuting witness was begun and the case submitted to the jury on the afternoon of June 18, 1956, and a verdict of guilty was returned. The Court pronounced the death sentence upon the appellant and from said judgment and sentence comes this appeal.

The prosecutrix was a clerk, employed by the Southern Bell Telephone & Telegraph Company in Allendale, South Carolina. She lived in her own home on Hickory Street in said town. On Saturday night, February 25, 1956, the prosecutrix was using the telephone in her bedroom. She heard a noise and went in the hall of her home and saw the appellant entering the front door. She advised him that he was in the wrong house, and he said "No", and that he knew where he was. The appellant pulled out a gun and knife and when the prosecuting witness screamed, he choked and threatened to kill her and knocked her down in the living room. She also testified that before he knocked her down he stated that he had entered the house for the purpose of taking her money and having sexual intercourse with her. He robbed the prosecuting witness and then raped her. The prosecuting witness absolutely identified the appellant as her assailant. A physician was immediately called after the departure of the appellant and he testified that the prosecutrix had been manhandled and that there was evidence of masculine habitat with the female organs of the prosecutrix. The appellant was arrested on February 28, 1956, and was taken to the headquarters of the South Carolina Law Enforcement Division, where he made a full and complete written confession, in which he admitted that he had come into the home of the prosecuting witness and there he had robbed and raped her. During the trial of the case the appellant admitted on direct examination that the confession he had given was correct. He also admitted that such statement was free and voluntary. Upon cross examination the record shows the following:

"Q. You came for two purposes, you came to get money and to rape her, except that you did not use the word rape?

"A. Yes sir.

"Q. And you did rape her?

"A. Yes sir, but not of my intention."

The evidence as to the identity and guilt of the appellant is overwhelming. In fact, the appellant, through his counsel, asserts in his brief the following:

"Of course, it was the desire and hope of the defendant that the jury would recommend mercy, and thus spare his life, since he had admitted the crime of rape and in effect pled guilty, and the question of whether or not to recommend mercy was the only matter for consideration by the jury."

At the conclusion of the main charge of the Honorable J. Henry Johnson, the presiding Judge, the jury was sent to the jury room and the trial Judge made the usual inquiry of counsel for the State and the appellant as to whether any further charge was desired. In response to this inquiry counsel for the appellant made the following request:

"May it please the Court, I realize that it is probably irrelevant but in view of the discussion that has gone on in the presence of the Jury as to burglary, I would like to request the Court to charge the Jury if he pleads guilty to burglary ordinarily he will be sentenced to life imprisonment."

Upon the return of the jury to the courtroom, the trial Judge further instructed the jury as follows:

"Mr. Foreman and gentlemen of the Jury, at the request of Counsel for the Defendant I am going to charge you something he asked me to charge you and also something he did not ask me to charge you. First, I charge you, at the request of Counsel for the Defense, that in determining the question of guilt or innocence of the accused on the charge of rape you are not concerned in any way whatsoever with the fact that he might have committed some other or any other crime, and you cannot take into consideration against

the accused, in arriving at your verdict in this case, you cannot take into consideration against him the fact that he may have committed any other crime. I take it that that so far is agreeable. I specifically charge you, at the request of the accused, if, however, he pleads guilty to the charge of burglary without recommendation to the mercy of the Court, as I understand that that was the offer that was made at the outset of the trial this morning, the punishment would be imprisonment during the natural life time of the accused."

The sole exception, which is the basis of this appeal, is as follows:

"In charging the jury that they could not take into consideration in arriving at their verdict the fact that the accused had committed another crime to which he desired to plead guilty and for which the punishment would automatically be imprisonment during his natural life, it being error to charge the jury what they could or could not consider in arriving at a decision as to whether or not they desired to recommend mercy for the defendant, when the question of a recommendation of mercy was the sole issue before the jury, the commission of the crime of rape having been admitted by the defendant."

The appellant does not assign any error to the main charge as made by the trial Judge but alleges that error was committed when the jury was brought back and given the further instructions above quoted. That portion of the additional instructions, which advised the jury that if appellant entered a plea of guilty to the charge of burglary without recommendation to the mercy of the court, the punishment would be imprisonment for the natural life of the appellant, certainly cannot be urged as error. This was charged at the specific request of the appellant. He cannot complain of instructions given at his own request. *State v. Hutto,* 127 S. C. 426, 121 S. E. 259. *State v. Herron,* 116 S. C. 282, 108 S. E. 93.

However, the appellant does contend that the court committed error in charging that they could not take into consideration, in arriving at their verdict, that the accused had committed another crime to which he desired to plead guilty, it being asserted that by such charge this took away from the jury the right to recommend mercy for the appellant.

A careful examination of the portion of the charge excepted to does not admit of the interpretation which the appellant places thereon. The trial Judge never told the jury that they could not take into consideration in arriving at a verdict, with a recommendation to mercy, the fact that the appellant had committed another crime to which he desired to plead guilty, and for which the punishment would automatically be imprisonment for life. He did charge the jury that they could not take into consideration such fact against the appellant "in determining the question of guilt or innocence of the accused on the charge of rape * * *." This charge, in our opinion, did not mislead the jury to the prejudice of the appellant. We think, on the contrary, that it was favorable to the appellant upon the question of whether he was guilty of the crime charged.

In the case of *State v. Murphy,* 214 S. C. 517, 53 S. E. (2d) 402, 405, this court said:

"In order to constitute reversible error, the reviewing court must be satisfied that there are reasonable grounds for supposing that the jury might have been misled to the prejudice of the appellant. *State v. Washington,* 80 S. C. 376, 61 S. E. 896; *Boggero v. Southern Ry. Co.,* 64 S. C. 104, 41 S. E. 819; *Sharpton v. Augusta & Aiken Ry.,* 72 S. C. 162, 51 S. E. 553. In this case no prejudice has been demonstrated."

This court has held in numerous cases that in determining the correctness of instructions, they should be considered as a whole, and if, as a whole, they are free from error, an assignment predicated on iso-

lated paragraphs or excerpts, which, standing alone, might be misleading, must fail. *State v. Higgins,* 215 S. C. 153, 54 S. E. (2d) 553. *State v. Clamp,* 225 S. C. 89, 80 S. E. (2d) 918. In considering the charge of the trial Judge as a whole, we find it to be clear, explicit and definite. A review of the charge of the trial Judge shows that he fully instructed the jury as to their right, in the event they found the defendant guilty, to recommend him to the mercy of the court. We quote the charge of the Trial Judge as to this feature of the case.

"I charge you also in that connection that the Jury can in any capital case, either murder, rape, alleged rape, or alleged murder or alleged assault with intent to rape, that the Jury may, for any reason in the world or for no reason in the world, except that it wants to do so, attach a recommendation to the mercy of the Court to its verdict and thereby reduce the punishment from electrocution to either hard labor for life or to a term in the State Penitentiary in this case of not less than five nor more than forty years. There don't have to be any extenuating circumstances and the Jury I repeat may, for any reason in the world or for no reason in the world, except that it wants to do so, attach a recommendation to the mercy of the Court to its verdict and thereby avoid the death penalty."

And again, when he was giving the jury the possible verdicts that could be returned, he charged the jury as follows:

"Secondly, it is within your province to return a verdict of guilty of rape, with a recommendation to the mercy of the Court, in which event the punishment would be reduced from death by electrocution to a term in the Penitentiary of not less than five, nor more than forty years, at the discretion of the Trial Judge."

The trial Judge, prior to the giving of the two foregoing charges, also read to the jury Section 16-72 of the

1952 Code of Laws of South Carolina, which he declared to be applicable. This section of the Code provides:

"Any person convicted of rape or assault with intent to ravish shall suffer death unless the jury shall recommend him to the mercy of the court in which event he shall be confined at hard labor in the State Penitentiary for a term not exceeding forty years nor less than five years, at the discretion of the presiding judge."

In the case of *State v. King,* 158 S. C. 251, 155 S. E. 409, 425, this court had under consideration the charge of the trial Judge with reference to recommending mercy in a case where a defendant was charged with murder. Such provision is now contained in Section 16-52 of the 1952 Code of Laws of South Carolina. What was there said by this court is appropriate here. We quote therefrom as follows:

"The act mentioned gave to a petit jury the right, when it found a defendant guilty of murder, to recommend him to the mercy of the court, and this recommendation has the effect of reducing the punishment from death to that of imprisonment in the penitentiary, with hard labor, for the lifetime of the prisoner, found guilty. The statute is very broad. It is clear that under its terms a jury may, for any reason whatever appearing to them refuse to have the accused put to death, but may spare his life. The proper charge to be given as to this statute is for the presiding judge to simply inform the jury that under its provisions they may recommend the defendant to the mercy of the court, and that the effect of such recommendation will be to save the accused from death, and cause him to be sentenced for lifetime imprisonment at hard labor."

We conclude that the charge of the trial Judge fully protected the rights of appellant in respect to the question of recommending mercy. It appears from the record that the conviction is clearly correct on the merits, the accused had a fair trial, and no other verdict could reasonably have been returned on the evidence.

In this case where the extreme penalty is to be exacted, and because of such, we have *in favorem vitae,* carefully examined the record for any errors affecting the substantial rights of the appellant, even though not made a ground of appeal. We find no such errors.

It is appropriate to state that counsel appearing for the appellant were appointed by the court. They have with commendable zeal and ability appeared and represented the interest of the appellant. This court acknowledges with appreciation their services.

The judgment of the lower Court is affirmed.

STUKES, C. J., and TAYLOR, OXNER and LEGGE, JJ., concur.