## STATE v. TRAPP.

1. In a case of burglary, the dwelling house was occupied by husband and wife, but leased by the wife, who had a separate estate, and the goods in the house belonged to the wife. *Held,* that the indictment properly laid the ownership of the house in the wife.
2. The ownership might properly have been laid in either husband or wife.

Before COTHRAN, J., Fairfield, February, 1882.

To the statement of the case contained in the opinion of this court should be added so much of the report of the presiding judge as is not there stated. It was as follows:

It was earnestly contended by the prisoner's counsel that the offence charged in the indictment was against the habitation, and as such affected the matter of possession rather than the right of property; that the constitution of 1868 touching the rights of married women as to property held or acquired by them separately, as well as the Act of Assembly upon the subject, do not operate upon or affect the family relation, which remains as at common law; that the possession being joint, and the husband's domiciliary right being thus unquestioned, as the head of the family he has not only the right to fix and determine but to control the matter of family domicile. The purpose of this report, and of the appeal which it is intended to forward, is to present sharply the single matter hereinbefore set forth.

It presents a case of *novel impression* in this State, and the motion made in behalf of the defendant is not without strong reasons for its support. In other States of the Union, where similar changes in the organic law as to the marital relations have long existed, there are not wanting judicial decisions that hold the doctrine contended for here. Nevertheless, to have granted the motion in this case would have had the effect of turning loose upon the community (without a precedent in this State to sustain it), upon a mere technicality, one convicted of a most daring and atrocious crime; and having instructed the jury to resolve all doubtful questions of *fact* in favor of the defendant, I determined to resolve a doubtful question of *law* in favor of the State, and refused the motion for a *new trial*, to which the defendant, by his counsel, duly excepted.

Mr. *J. E. McDonald,* for appellant.

Burglary, like arson, is an offence against the *habitation,* the *residence,* the *domicile,* and regards the *possession* rather than the property. 2 *Bl. Com.* 220, 223; 1 *Bish. Crim. Law,* §§ 104, 559; 1 *Russ. Crimes,* 797; 2 *Whart. Crim. Law,* §§ 1555, 1566; 29 *Conn.* 342; 26 *Mich.* 106. Being such, it is an offence against the domiciliary proprietor, the head of the family, who is the husband. 1 *Bouv. Inst.* 62, 96, 98, 115, 116; 2 *Wait Act. & Def.* 635, 638; *Tyler Inf. & Cov.* 312; 2 *Bish. Mar. Wom.* § 157; 1 *Russ. Cr.* 807-9; 2 *East P. C.*

500–4; 2 *Whart. Cr. Law*, §§ 1577, 1582; 38 *E. C. L. R.* 175. The constitution and acts enlarging the rights of married women have not modified the common law rule in this respect. The husband still has a right to fix, determine and control the family domicile, and to be the legally recognized head of the family. *Tyl. Inf. & Cov.* 789; 12 *Casey*, 410; 2 *Bish. Mar. Wom.* § 24; 12 *Md.* 108; 124 *Mass.* 30; 26 *Mich.* 106.

Mr. *Solicitor Gaston*, contra.

July 22, 1882. The opinion of the court was delivered by

Mr. Justice McIver.—The defendant having been convicted of burglary, moved the circuit judge for a new trial, upon the ground that the indictment alleged that the house which was broken into was "the dwelling house of Mrs. Mary Ladd," whereas it should have alleged the house to be that of her husband, A. W. Ladd. "The testimony of Mrs. Ladd and of her husband, which was not contradicted, showed that Mrs. Ladd had a separate estate; that she had leased the premises occupied by them; that the goods in the house belonged to her, and that her husband acted as her agent." The circuit judge refused the motion, whereupon this appeal was taken, which presents the single question, whether the allegation of ownership of the house was sufficient.

This question, as is said by the circuit judge, is one of novel impression in this State, and therefore we are not bound to follow the technical rules which formerly embarrassed the courts in determining questions of this character, under the principles of the common law. Indeed an examination of the various cases in which such questions have arisen would show that it would be quite difficult, if not impossible, to reconcile them, or to extract from them any well-defined rule. As is said in 2 *Bish. Crim. Prac.* § 109: "It is not easy to lay down, in a single sentence, a rule by which the ownership is, within the principles pertaining to this department of our law, to be determined. Probably in some cases the ownership may be laid in one person or another, at the election of the pleader. Thus where a gardener lived in a house of his master, quite

separate from the dwelling house of the latter, and the gardener had the entire control of the house he lived in, and kept the key, it was held that on an indictment for burglary, the gardener's house might be laid either as his or his master's," citing *Rex* v. *Rees,* 7 *C. & P.* 568.

So in 2 *East P. C.* 499, it is said : "It is necessary to ascertain to whom the mansion belongs, and to state that with accuracy in the indictment. And here it is to be lamented that the same rule does not prevail in this case as in arson, which is considered as an offence against the actual possessor, by whatever title he may hold possession. But in burglary the rule is much more complex, the ownership being neither referable altogether to the legal title nor to the possession, but partaking sometimes of one, sometimes of the other, as well as of both. If the rule by which to ascertain this ownership may be compressed, with sufficient discrimination, into a small compass, I should say, generally, that where the legal title to the whole mansion remains in the same person, there, if he inhabit it, either by himself, his family or servants, or even by his guests, the indictment must lay the offence to be committed against his mansion."

So far as we can perceive, there are only two reasons for requiring the ownership of the house to be stated in an indictment for burglary : 1st. For the purpose of showing on the record that the house alleged to have been broken into, was not the dwelling house of the accused, inasmuch as one cannot commit the offence of burglary by breaking into his own house. 2d. For the purpose of so identifying the offence, as to protect the accused from a second prosecution for the same offence. Hence when the ownership is alleged to be in a person who is not the accused, and that allegation is proved upon the trial, the reasons of this requirement seem to be fully met.

In this case the allegation of ownership has been shown by the evidence to be strictly true ; that the wife not only had the legal title, but that she actually resided in the house at the time ; and the fact that it may, at the same time, have been the residence of her husband as well as of herself, cannot affect

the question. If her right to reside in the house in question depended solely upon the marital relation, then a different question would be presented ; but where, as in this case, she not only had the right to reside there by virtue of her marital relation, but also by virtue of being the legal owner of the premises, and did actually reside in the house at the time of the alleged burglary, we think the allegation of ownership in her was strictly true in point of fact, and was quite sufficient to sustain the indictment.

It is true that burglary is an offence against the *habitation* of some other person, but it is very clear that it is not essential that such habitation shall be alleged to be that of the person who actually occupies—inhabits—the house at the time it is broken into, for there are quite a number of cases in which indictments alleging ownership in the master have been sustained, where the house was, at the time, not occupied by the master, but by some other person as his servant or agent. In *Rex* v. *Atthea*, *Ry. & Mood. C. C.* 399, cited in 2 *Arch. Cr. Pl. & Prac.* 296, it was held that a house, the joint property of partners in trade, and in which their business was carried on, might be described as the dwelling house of all the partners though only one of them resided in it.

Some of the old English cases went very far in cases of married women, but that was because the common law ignored the separate existence of a married woman, so far as property rights were concerned, and regarded the wife as nothing more than the servant of the husband. Hence in *Rex* v. *French*, *Russ. & Ry.* 491, where a dwelling house in which a wife lived separate and apart from her husband, the rent of which was paid out of her separate estate in the hands of trustees, was broken into, the court held that the indictment properly laid the ownership of the house in the husband, although he had never been in it, saying " it was the dwelling house of some one ; it was not that of the trustees, for they had nothing to do with it ; it was not the wife's, because, at law, she could have no property ; it could then only be the husband's." It is very manifest that this case and others of a like character cannot now be regarded as authority, based as they are upon the incapacity of a

married woman to hold property, when such incapacity has been entirely removed.

The case of *Snyder* v. *The People*, 26 *Mich.* 106, much relied on by the appellant, we do not think is in point. In that case the husband was indicted for arson in burning the dwelling house of his wife, which was owned by her as her separate property, though it was occupied by them jointly as a residence. The court held that the indictment would not lie, inasmuch as it could not be said that the husband had violated the statute making it a penal offence wilfully and maliciously to burn, in the night time, " *the dwelling of another*," the house burned being his dwelling place, and not " the dwelling of another." The court used this language : " The property is hers alone, but the residence is equally his ; the estate is in her, but the dwelling house, the *domus*, is that of both." Care was taken, however, to reserve the question as to what would have been the result if it had appeared that the husband was not actually occupying the house, as a residence, when it was burned ; the court saying : " There is much reason for holding that the wife's dwelling house can be considered that of the husband, only while he makes it such in fact, and that there is no such legal identity as can preclude her house being considered, in legal proceedings against him, as the dwelling of ' another,' when it is no longer his abode."

In the case now before the court it was conceded that the wife was the legal owner of the premises, and as long as they were jointly occupied by herself and husband as their dwelling, we say in the language of Judge Cooley, *supra :* " The property is hers alone, but the residence is equally his ; the estate is in her, but the dwelling house, the *domus*, is that of both." Hence in this case an allegation of ownership in either husband or wife would have been sufficient, inasmuch as either allegation would have been sustained by the evidence and would have been sufficient to show upon the record that the accused was charged with breaking into the dwelling house of another, and would have so identified the offence as to protect him from another charge for the same offence.

The judgment of this court is that the judgment of the Circuit Court be affirmed.