679 S.E.2d 538

**The STATE, Respondent,**

v.

**Ferris Geiger SINGLEY, Appellant.**

**No. 4541.**

Court of Appeals of South Carolina.

Submitted March 4, 2009.
Decided May 6, 2009.
Rehearing Denied June 29, 2009.

442

Chief Appellate Defender Joseph L. Savitz, III, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Deborah R.J. Shupe; all of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

SHORT, J.

Ferris Geiger Singley appeals his first-degree burglary conviction and sentence of life without parole, arguing the trial court erred in denying his directed verdict motion because one cannot commit the offense of burglary by breaking into one's own dwelling. We affirm.

## FACTS

In late August 2001, Singley's father passed away. As a result, his father's ownership interest in Singley's childhood home passed intestate to Singley, his mother, and his brother.[1] Singley grew up in the home and lived there until his early twenties. Singley returned and resided in the home briefly in 2005, but his mother requested he leave the home in April of the same year. His mother testified Singley did not have permission to enter the house after April 2005. She also stated Singley did not return his key, but informed her he had lost it.

In October 2005, Singley's mother returned home from a night out when Singley jumped her from behind, put a knife to her throat,[2] and demanded money. His mother gave him all the money she had at the time. Then, Singley forced his mother into the bedroom and tied her to the bed. After he

---

1. Singley and his brother each owned 12.5% of the house, and his mother owned 75% of the house.

2. Singley's mother testified at trial that he told her he entered the house by crawling through a bedroom window.

left, Singley's mother untied herself and went to a neighbor's house for help.

Singley was charged with kidnapping, armed robbery, and first-degree burglary. At trial, Singley moved for a directed verdict on the first-degree burglary charge, arguing he was part owner of the house and could not be found guilty of burgling his own home. The trial court denied Singley's motion. The jury convicted Singley of armed robbery and first-degree burglary. Singley was sentenced to two concurrent sentences of life without parole pursuant to statute.[3] This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *Id.* When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State. *Id.* If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the appellate court must find the case was properly submitted to the jury. *Id.* at 292–93, 625 S.E.2d at 648.

## LAW/ANALYSIS

■ First-degree burglary is defined in section 16–11–311 of the South Carolina Code of Laws (2003):

A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and either:

(1) when, in effecting entry or while in the dwelling or in immediate flight, he or another participant in the crime:

(a) is armed with a deadly weapon or explosive; or

---

3. S.C.Code Ann. § 17–25–45 (2003).

(b) causes physical injury to a person who is not a participant in the crime; or

(c) uses or threatens the use of a dangerous instrument; or

(d) displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or

(2) the burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or

(3) the entering or remaining occurs in the nighttime.

Entering a building without consent is defined as entering "without the consent of the person in lawful possession" or entering "using deception, artifice, trick, or misrepresentation to gain consent to enter from the person in lawful possession." S.C.Code Ann. § 16–11–310 (2003).

█ While "lawful possession" has not been defined by South Carolina statutes or case law, burglary has historically developed as a crime against the possession of the dwelling. For instance, *State v. Brooks*, 277 S.C. 111, 112, 283 S.E.2d 830, 831 (1981), defines burglary as "a crime against possession, not against property." *See also State v. Miller*, 225 S.C. 21, 26, 80 S.E.2d 354, 356 (1954) ("The offense of housebreaking is an offense against possession.") (citing *State v. Alford*, 142 S.C. 43, 44, 140 S.E. 261, 261 (1927) ("Burglary and arson are crimes against possession and not against property.")). Furthermore, "[t]he law of burglary is primarily designed to secure the sanctity of one's home, especially at nighttime when peace, solitude[,] and safety are most desired and expected." *Brooks*, 277 S.C. at 112, 283 S.E.2d at 831. "Thus, at the heart of burglary law is protection of the individual and family from unlawful intrusion while home at night." *Id.* at 113, 283 S.E.2d at 831.

Moreover, an early discussion of the possessory interest rather than ownership interest with regards to a burglary indictment is found in *State v. Trapp*, 17 S.C. 467 (1882). Trapp was convicted of burglary and challenged his conviction on the ground that the indictment listed a woman as the owner of the house he burglarized, rather than her husband, the legal owner. *Id.* at 469. Our supreme court stated there are two reasons for requiring the ownership of the house to be

stated in the indictment for burglary: (1) "For the purpose of showing on the record that the house alleged to have been broken into, was not the dwelling house of the accused, inasmuch as one cannot commit the offense of burglary by breaking into his own house" and (2) "For the purpose of so identifying the offence, as to protect the accused from a second prosecution for the same offence." *Id.* at 470. The court went further to say:

It is true that burglary is an offence against the *habitation* of some other person, but it is very clear that it is not essential that such habitation shall be alleged to be that of the person who actually occupies-inhabits-the house at the time it is broken into, for there are quite a number of cases in which indictments alleging ownership in the master have been sustained, where the house was, at the time, not occupied by the master, but by some other person as his servant or agent.

*Id.* at 471. Likewise, *Trapp* discussed an earlier case from Michigan, *Snyder v. The People,* 26 Mich. 106 (1872), where the element "dwelling of another" was at issue. Trapp. 17 S.C. at 472. There, the court determined even when the perpetrator of the property crime of arson is married to the individual with sole legal ownership, the arsonist may be found guilty of arson if the property is not his abode. *Id.*

Additionally, a few South Carolina cases have addressed burglary in the context of a person with either permission to be in the dwelling, or a person who formerly had permission to be in the dwelling. For example, *State v. Bee,* 29 S.C. 81, 83, 6 S.E. 911, 912 (1888), provided a servant, sleeping in an adjacent room, can commit burglary in the dwelling house by "unlatching his master's door, and entering his apartment" with the intent to commit a felony. *Id.* Additionally, in *State v. Howard,* 64 S.C. 344, 348–49, 42 S.E. 173 (1902), our court stated while one cannot commit burglary of his own dwelling house, when a servant enters a latched or fastened door at night for the purpose of committing a felony, it amounts to burglary. *Id.,* 42 S.E. at 175.

Most recently, the South Carolina Supreme Court affirmed the denial of a directed verdict in *State v. Coffin,* 331 S.C. 129, 132, 502 S.E.2d 98, 99 (1998). In *Coffin,* the defendant was

convicted of first-degree burglary[4] after entering his girl-friend's home and stabbing her to death. *Id.* at 132, 502 S.E.2d at 98. The victim's roommate testified the victim was the only other person with a key to the residence, her name was the only one signed on the lease, and Coffin's identifica-tion was "affixed pursuant to a clause requiring that Visitors' be approved." *Id.* at 132, 502 S.E.2d at 99. The Court affirmed the trial court's denial of Coffin's directed verdict motion, finding the evidence "supports the inference [Coffin] was a guest in [the victim's] home and she was entitled to terminate [his] lawful possession by evicting him as she did before the stabbings occurred." *Id.* at 132, 502 S.E.2d at 99. The Court held the evidence presented a jury question as to whether Coffin "was in lawful possession of the mobile home at the time of the stabbings."[5] *Id.*

Courts in other states have made similar conclusions when interpreting the issue of lawful possession. *See State v. Harold,* 312 N.C. 787, 325 S.E.2d 219, 222 (1985) ("The defendant's emphasis on the issue of ownership is misplaced ... the inquiry relevant to this element of the crime is whether the premises is the *dwelling* of another, not whether it is *owned* by another.") (emphasis in original); *Murphy v. State,* 238 Ga. 725, 234 S.E.2d 911, 914 (1977) (" 'Ownership', as that term is used in property law, is not an essential ingredient to proving that the premises entered were 'the dwelling house of another' within the meaning of our burglary law ... [a]ll that is required was that ... it was occupied.").

Here, while Singley lawfully owned 12.5% of the dwelling, we do not believe his ownership of title gave him a possessory interest recognized under the burglary statute. Under the statute, it is clear that Singley's mother, not Singley, was the person in lawful possession. This is most notably evidenced by Singley's acknowledgement of his mother's right to occu-pancy and possession by his acquiescence to her demand for

---

4. Coffin was also convicted of murder, assault and battery with the intent to kill, and two counts of possession of a knife during the commission of a violent crime. *Coffin,* 331 S.C. at 129–30, 502 S.E.2d at 98.

5. Coffin also stabbed his girlfriend's roommate. *Coffin,* 331 S.C. at 131, 502 S.E.2d at 98.

him to vacate the house in April 2005. Additionally, Singley's mother owned 75% of the dwelling, and Singley's mode of entrance through a window implies his entry was without consent.

Thus, we believe the trial court did not err in denying Singley's directed verdict motion because the State offered sufficient evidence to prove all the elements of burglary, including establishing Singley's mother as the sole lawful possessor of the dwelling when the burglary occurred. Additionally, the State proved Singley entered unlawfully and without his mother's consent.

## CONCLUSION

Accordingly, Singley's conviction is

**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.