709 S.E.2d 603

The STATE, Respondent,

v.

Ferris Geiger SINGLEY, Petitioner.

No. 26954.

Supreme Court of South Carolina.

Heard Feb. 15, 2011.
Decided April 4, 2011.

Chief Appellate Defender Robert M. Dudek, Senior Appellate Defender Joseph L. Savitz, III, South Carolina Commission on Indigent Defense, both of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, Office of the Attorney General, all of Columbia, Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

Justice HEARN.

Ferris Geiger Singley was convicted of burglary and armed robbery in an incident involving a home which he jointly owned with his mother and brother. On appeal, Singley argues his first degree burglary conviction must be reversed because of his ownership interest in the house. We granted

certiorari to review the decision of the court of appeals, which affirmed Singley's conviction. We likewise affirm and find ownership does not preclude a burglary conviction as a matter of law, and we take this opportunity to expand upon the reasoning of the court of appeals.

## FACTUAL/PROCEDURAL BACKGROUND

By virtue of intestate succession, Singley inherited a 12.5 percent interest in his childhood home from his father in August 2001. His brother owns an additional 12.5 percent, and his mother owns the remaining 75 percent. Singley remained in the house until his early twenties, and then returned again in April 2005. He resided there for three weeks, until his mother "put him out" of the house. He did not return his key to his mother, telling her that he had lost it. As between Singley and his mother, Singley did not have permission to return to the house. It was not until one night in early October 2005, some six months later, that he did so.

On that night, Singley's mother was at a bar with friends, returning home at approximately 2:30 am. While she was out of the house, Singley entered through a back window after climbing a small stepladder. When she returned, Singley jumped out from behind her and put a knife to her throat. He threatened to kill her if she screamed, and then demanded money from her. After she complied with his requests, he forced her into her bedroom and tied her to the bed using jogging pants, medical tape, and pajamas. He threw her telephone out the window and ordered her to wait twenty minutes before attempting to find help. Once she was sure Singley had left and would not return, his mother freed herself from her restraints and went to a neighbor's house to call the police. Police arrested Singley at his residence, which was around the corner from his mother's house.

Singley was indicted for first degree burglary, armed robbery, and kidnapping. Singley moved for a directed verdict on all charges. As to the burglary charge, Singley argued that because he is a part owner of the house and there was no order of protection or similar legal instrument divesting him of his right to enter it, the State failed to prove that he entered the house without the consent of a person in lawful possession.

In essence, he argued that because he was a person in lawful possession, he could enter freely without his mother's consent. The circuit court denied Singley's motion. The jury found Singley guilty of burglary and armed robbery, but it acquitted him of kidnapping. The circuit court sentenced Singley to consecutive sentences of life without parole. On appeal to the court of appeals, Singley challenged only his burglary conviction. *State v. Singley*, 383 S.C. 441, 441, 679 S.E.2d 538, 539 (Ct.App.2009). He repeated the arguments he made at the directed verdict stage that one cannot commit burglary by breaking into one's own dwelling. *Id.* The court of appeals affirmed, holding that Singley's mother was the sole possessor of the dwelling when the burglary occurred, and therefore her consent was needed to enter. *Id.* at 447, 679 S.E.2d at 542.

## ISSUE PRESENTED

Singley raises one issue on appeal: does his ownership interest in the home preclude a conviction of burglary as a matter of law?

## STANDARD OF REVIEW

The trial court must grant a motion for directed verdict of acquittal when the State fails to produce any evidence of the crime charged. *State v. Parris*, 363 S.C. 477, 481, 611 S.E.2d 501, 502 (2005). At that juncture, the court is concerned only with the existence of evidence, not its weight. *Id.* at 481, 611 S.E.2d at 502–03. "If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case properly submitted to the jury." *Id.* at 481, 611 S.E.2d at 503. We will view all evidence in the light most favorable to the State. *Id.*

## LAW/ANALYSIS

Singley argues that because he has an ownership interest in the house without any legal impediment to his right to possess, he cannot be guilty of burglary as a matter of law. We disagree.

The statute for first degree burglary provides, in pertinent part, "A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and ... the entering or remaining occurs in the nighttime." S.C.Code Ann. § 16–11–311(A)(3) (2003). It goes on to define entering without consent in part as, "[t]o enter a building without the consent of the person in lawful possession." *Id.* § 16–11–310(3)(a). The code provides no further guidance. Singley only challenges the possession element of burglary. More specifically, he only argues his ownership interest insulates him from a conviction of burglary; he does not contend he had consent from his mother to enter the home, and he does not allege his mother did not have a possessory interest in it.

We have maintained consistently for well over one hundred years that burglary is a crime against possession and habitation, not a crime against ownership. *State v. Clamp,* 225 S.C. 89, 102, 80 S.E.2d 918, 924 (1954); *State v. Alford,* 142 S.C. 43, 45, 140 S.E. 261, 262 (1927); *State v. Trapp,* 17 S.C. 467, 471 (1882). In those cases, we held that the victim listed in the indictment need not be the owner of the dwelling burglarized; it is sufficient that the alleged victim was the occupant and possessor of the dwelling. *See Clamp,* 225 S.C. at 102, 80 S.E.2d at 924; *Alford,* 142 S.C. at 45, 140 S.E. at 262; *Trapp,* 17 S.C. at 472.[1] The focus accordingly was on the victim's possessory interest, and the defendant's ownership or possession of the dwelling was not an issue. The same is true for the cases from other jurisdictions relied upon by the court of appeals in its decision. *See Murphy v. State,* 238 Ga. 725, 234 S.E.2d 911, 914 (1977) ("The defendant contends that the state failed to prove that the dwelling was entered 'without authority' of the owner. The state proved that the dwelling was entered without authority from the victim, the lawful

---

1. *Trapp* is very much a product of its time. There, the issue was whether a woman could have a sufficient possessory interest in a dwelling. *Trapp,* 17 S.C. at 468–69. It was actually conceded that the woman was the legal owner of the property in question, *id.* at 472, and her name was listed in the indictment as the victim, *id.* at 469. The argument on appeal was that the husband was the "domiciliary proprietor," and therefore only he could have a sufficient possessory interest to support a conviction of burglary. *Id.* at 468–69. The Court rejected this argument. *Id.* at 472.

occupant. This was sufficient to allow the case to go to the jury for decision. . . ."); *State v. Harold*, 312 N.C. 787, 325 S.E.2d 219, 222 (1985) (finding that although the state did not prove the victim owned the house in question, it did show she lived there for five months prior to the incident and she was occupying it on the night of the incident).

We have had only one previous opportunity to address the *defendant's* interest in the burglarized premises under section 16–11–310(3)(a). In *State v. Coffin*, 331 S.C. 129, 502 S.E.2d 98 (1998), the defendant moved into his girlfriend's mobile home; in accordance with her lease, he was approved as a visitor, and the landlord affixed a copy of his driver's license to the lease with the notation that he was "a legal qualified person living in that mobile home." *Id.* at 130–31, 502 S.E.2d at 98–99. The defendant did not sign the lease himself, although he did pay rent on occasion. *Id.* at 131, 502 S.E.2d at 99. According to the Court, the defendant's girlfriend "threw him out" of the house and refused to let him back in following an argument. *Id.* He later returned, pried open the front door, murdered his girlfriend, and stabbed her companion. *Id.* On appeal of his conviction of burglary, the defendant alleged that he was a person in lawful possession of the mobile home and therefore did not need his girlfriend's consent to enter. *Id.* We rejected that argument:

> This evidence supports the inference [defendant] was a guest in [his girlfriend's] home and she was entitled to terminate [defendant's] lawful possession by evicting him as she did before the stabbings occurred. Accordingly, this evidence presents a jury issue whether appellant was in lawful possession of the mobile home at the time of the stabbings.

*Id.* at 132, 502 S.E.2d at 99.

In *Coffin*, the facts demonstrated that the defendant did not have an absolute right to possess the property. Instead, his rights were dependent solely on his girlfriend's good graces. Here, it appears Singley did have an undivided right to possess the home equal to that of his mother by virtue of his ownership interest in it. *See Watson v. Little*, 224 S.C. 359, 365, 79 S.E.2d 384, 387 (1953) (holding tenants in common have equal rights to possess the whole of the property,

regardless of their fractional ownership shares); *see also* S.C. Juris. Cotenancy § 9 (citing *Rabb v. Aiken*, 7 S.C.Eq. (2 McCord) 118 (1827)) (stating when two or more beneficiaries inherit the property of an intestate, they take as tenants in common). However, we believe that the mere holding of title to property is not dispositive of whether the owner can be convicted of burglarizing it.

■■■ It is axiomatic that "one cannot commit the offence of burglary by breaking into his own home." *Trapp*, 17 S.C. at 470. However, the concept of what is one's "own home" must be examined in light of the very purpose behind the law of burglary. "The law of burglary is primarily designed to secure the sanctity of one's home, especially at nighttime, when peace, solitude and safety are most desired and expected.... To preserve this security and this sanctity the law has created safeguards and imposed severe penalties on their infringement." *State v. Brooks*, 277 S.C. 111, 112–13, 283 S.E.2d 830, 831 (1981). Therefore, our burglary laws protect an interest separate and apart from ownership: the right to be safe and secure in one's home. *See also People v. Smith*, 142 Cal.App.4th 923, 48 Cal.Rptr.3d 378, 384 (2006) (noting the difference between possessory right under the burglary statute and family law); *State v. McMillan*, 158 N.H. 753, 973 A.2d 287, 292 (2009) ("[W]hile the defendant had some proprietary interest in the apartment as a co-lessee, this fact did not automatically give him license to enter under [the burglary statute].... [T]he entry here interfered with the security and safety of the occupant, thus implicating the very interests the burglary statute was designed to protect."); *State v. Lilly*, 87 Ohio St.3d 97, 717 N.E.2d 322, 327 (1999) ("Because the purpose of burglary law is to protect the dweller, we hold that custody and control, rather than legal title, is dispositive. Thus, in Ohio, one can commit a trespass and burglary against property of which one is the legal owner if another has control or custody of that property."). Thus the core of a dwelling constituting one's home for burglary purposes is the expectation of peace and security therein. Mere ownership does not automatically confer this status on a person. That ownership interest must be examined in light of who possesses that expectation of sanctity in the dwelling.

Therefore, the proper test is whether, under the totality of the circumstances, a burglary defendant had custody and control of, and the right and expectation to be safe and secure in, the dwelling burglarized. *See McMillan*, 973 A.2d at 292 ("We ... conclude that holding a legal interest in property ... is not dispositive on the issue of license or privilege. Consistent with the majority of jurisdictions that have confronted this issue, we believe that the fact finder must look beyond legal title and evaluate the totality of the circumstances in determining whether a defendant had license or privilege to enter."). If so, he is a person in lawful possession and cannot be convicted of burglary. If not, the jury must then determine whether the alleged victim had this interest and whether the defendant invaded it. We wish to emphasize that this is an inherently fact-intensive inquiry. In the end, while an ownership interest is probative of whether the defendant was a person in lawful possession, it is not dispositive.[2] It is instructive that our statutes do not define burglary in terms of who owns the property, but rather in light of who possesses it. If section 16–11–310(3)(a) defined "without consent" as "to enter a building without consent of the lawful owner," our inquiry would be very different. Instead, the General Assembly specifically couched burglary in terms of possession.

In this case, we are concerned only with whether Singley had the requisite interest in the home. Viewed in the light most favorable to the State, the facts of this case warranted the submission of the case to the jury. A reasonable jury could conclude that Singley did not have any expectation of peace and security in the dwelling at issue nor custody and control of it, despite his ownership interest. He left with little protest when his mother requested he leave, took up residence

---

2. For example, a defendant may not have a sufficient possessory interest where he is the lessor of certain property he owns or a court has issued an order of protection preventing the defendant from entering a dwelling in which he has an ownership interest. In both of those situations, there is some legal impediment that prevents the defendant from exercising his right to possess the property in question. In the situation before us, the defendant retained his legal right to enter the property, but he may have acceded his right to possess it as a *home*— with the attendant safety, security, peace, and privacy—to another individual.

elsewhere, and did not return until six months later when he was required to enter through a back window. Therefore, the jury could find that the home was not Singley's "own home" for burglary purposes. Accordingly, the court of appeals correctly held the circuit court did not err in denying Singley's motion for a directed verdict of acquittal.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals. Once again, we wish to emphasize that the inquiry into whether a defendant has a sufficient possessory interest in the dwelling burglarized is highly factual. A defendant's ownership interest in the dwelling will not preclude a conviction of burglary *as a matter of law.* Rather, the jury must determine whether, under the totality of the circumstances, the defendant used the dwelling in such a manner that it could be said to be his own home, therefore making him a person in lawful possession.

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.