# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

John Kenneth Massey Jr., Respondent.

Appellate Case No. 2019-000842

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from York County
Eugene C. Griffith Jr., Circuit Court Judge

---

Opinion No. 27981
Heard March 11, 2020 – Filed June 10, 2020

---

## REVERSED AND REMANDED

---

Attorney General Alan Wilson, Senior Assistant Deputy Attorney General Megan Harrigan Jameson, and Senior Assistant Attorney General Mark R. Farthing, all of Columbia; and Solicitor Kevin S. Brackett, of York, for Petitioner.

Appellate Defender David Alexander, of Columbia, for Respondent.

---

**CHIEF JUSTICE BEATTY:**   The State indicted John Kenneth Massey Jr. ("Massey") for first-degree burglary, grand larceny, and criminal conspiracy.  The circuit court granted a defense motion to quash the indictment for first-degree burglary on the basis the premises entered did not qualify as a dwelling.  The court of appeals affirmed.  *State v. Massey*, 426 S.C. 90, 825 S.E.2d 717 (Ct. App. 2019). We granted the State's petition for a writ of certiorari and now reverse and remand.

## I.  FACTS

This case has an unusual procedural history that dictates our result.  The indictment for first-degree burglary against Massey alleged as follows:

> The Defendant, John Kenneth Massey Jr., did in York County, South Carolina, on or about January 12, 2014, while acting in concert with another person, willfully and unlawfully *enter the dwelling* of Kristopher Callahan, *when he entered without consent the outbuilding appurtenant to and within 200 yards of the dwelling house* establishment of Kristopher Callahan, all located at [redacted] in Rock Hill, South Carolina, without consent and with the intent to commit the crime of larceny therein and said entering and remaining did occur during the nighttime hours, all in violation of Section 16-11-311, Code of Laws of South Carolina (1976, as amended).

(Emphasis added.)  Before the jury was sworn, defense counsel moved to quash the indictment, stating, "Your Honor, the indictment that the [S]tate has provided *is correctly in line with the statute*[1] but I would argue *is faulty with regards to the facts of this case*."  (Emphasis added.)

Defense counsel asserted the State had the burden of showing the outbuilding was both within 200 yards of *and* appurtenant to the victim's residence (based on

---

[1] *See* S.C. Code Ann. § 16-11-311(A)(3) (2015) ("A person is guilty of burglary in the first degree if the person enters a *dwelling* without consent and with intent to commit a crime in the *dwelling*, and . . . the entering or remaining occurs in the nighttime."  (emphasis added)).

South Carolina's definitional statutes).[2]  Defense counsel maintained the building does not qualify as a dwelling for purposes of the first-degree burglary statute because it is not appurtenant to the residence of the burglary victim, Kristopher Callahan ("Callahan").  Defense counsel alleged the building is not appurtenant because it actually houses a business, so its use is not related to the residence, and it is on a separate parcel owned by another individual, stating "[a]t least [that is] what the county records indicate."  Counsel submitted county tax records indicating the residence is located on a parcel owned by Callahan's parents, and the building is on a parcel owned by Callahan's uncle.  The county records also show the residence and the building share a common driveway that provides the only access to an adjacent road.

The State opposed the motion, arguing the building is within 200 yards of and appurtenant to the victim's residence.  The State pointed out South Carolina case law has long held that South Carolina's burglary statutes safeguard a person's right of possession, not ownership, so ownership of the burglarized property is not required. The State proffered the testimony of Callahan, who stated he lives with his parents and a family friend in the residence, and a red storage building is "roughly 45/48 feet" (i.e., no more than 16 yards) from the residence.  Callahan testified the home and the storage building are both located on land once owned by his grandfather. When Callahan's parents got married, his grandfather gave them five acres of property to build a home.  After Callahan's grandfather passed away, the land became his mother's, but it was never formally placed in her name.  Rather, the property was simply treated as "family land" and the parties "left it in the farm name," which Callahan stated is held by his uncle, "who lives on the other side of [Callahan and his parents]."

---

[2] *See* S.C. Code Ann. § 16-11-10 (2015) (defining "dwelling house" in cases of burglary, arson, and other criminal offenses and stating "any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property *shall be deemed a dwelling house*, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within *two hundred yards of it and are appurtenant to it* or to the same establishment of which it is an appurtenance *shall be deemed parcels*" (emphasis added)); *see also id.* § 16-11-310(2) (stating "dwelling" for purposes of the state's burglary statutes "means its definition found in Section 16-11-10 and also means the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person").

Callahan also testified as to his use of the building. He explained the building was primarily used by himself and his father, and that he treated the building like a garage to store his personal items, such as four-wheelers (one of which was taken in the burglary), boats, beds, and tools. He acknowledged having some work items on the premises from a small waterproofing and grading business that he ran from the home, meeting other workers outside the building to travel to various job sites, and having a sign on the building. However, he stated all work was done at the job sites, and the sign was not visible from the road. Rather, the sign was from his sponsorship of the family friend at a rodeo event, and he kept it because it has his name on it. Callahan testified he did not handle the taxes on the building, but he thought it was taxed with the land on which it is situated.

The State asserted South Carolina law does not provide a precise definition of appurtenant in this context, but there is precedent stating a building can be devoted partially to a business use and still qualify as a dwelling. Defense counsel, in contrast, contended the precedent cited by the State applied when a single structure is used for both sleeping and business purposes, but the current situation is distinguishable because the building is a separate structure from the residence. Defense counsel argued that "practically and legally," the building is not appurtenant to the residence because it is used for a business and there are no legal rights running between the parcels; thus, all of the elements of a first-degree burglary offense were not established.

At the conclusion of the arguments, the circuit court asked the parties, "Does anybody suggest it's a factual question?" Defense counsel stated he did not believe it was factual. The State did not respond. The circuit court took the matter under advisement. The next morning, the circuit court asked the parties if they would like to be heard further. The State reiterated several of its arguments, noting under South Carolina's statutory law, if a building is within 200 yards of and appurtenant to a dwelling, it is itself a dwelling, and court precedent holds burglary is a crime against possession, not ownership, so it did not matter that the building "might" have been in the name of another person. The State maintained the building is used by Callahan to store items that do not "have anything to do with his business," so the building is appurtenant to the residence and constitutes a dwelling for purposes of a first-degree burglary charge.

The circuit court granted the motion to quash the indictment, finding the building is located on a separate piece of property that is taxed separately and titled in the name of a different owner, Callahan does not have an ownership interest in either of the properties, and no testimony was presented that anyone was sleeping in

the building. The circuit court noted Callahan might own the land "one day, if it's family land," but "he doesn't right now." The circuit court observed that it had specifically asked the parties if they thought the case presented a factual question, and stated it believed this to be "a legal issue." The circuit court thereafter stated it did not believe the building is "appurtenant to the residence owned by the victim's parents, *factually*." (Emphasis added.)

The State advised the circuit court that it wanted to place on the record that burglary is not a crime against ownership, "not who owns plats of lands," but that it understood the ruling and could not go forward with the trial. The circuit court noted it was not suggesting "that this is not a burglary," based on "all the facts being presented thus far," but a ruling that the offense was not shown to be first-degree burglary. The circuit court opined, however, that "there would be factually plenty to support a burglary-second indictment."

The State filed a post-trial motion under Rule 29, SCRCrimP, asserting the circuit court did not have the authority to quash the indictment because a motion to quash is appropriate only when there are defects apparent on the face of the indictment. The State also incorporated its prior arguments made at the hearing. In a written order, the circuit court summarily denied the State's motion: "The court holds the State's arguments to be without merit. The Defendant is alleged to have entered an out building that was used as a business on a separate piece of property from the victim's mother's home. Therefore, the State's motion is denied." The circuit court did not specifically address the State's challenge to a court's authority to quash a facially valid indictment, although it noted the State had advanced this argument in its Rule 29 motion.

The court of appeals affirmed. *State v. Massey*, 426 S.C. 90, 825 S.E.2d 717 (Ct. App. 2019). First, the court found the State's argument that the circuit court did not have the authority to dismiss a facially valid indictment was raised for the first time on appeal; therefore, any error was waived by the State and was not preserved for review. *Id.* at 95–96, 825 S.E.2d at 720.

Second, the court of appeals observed that "[a]pplying the plain language of section 16-11-10 establishes that the storage building is not a dwelling for the purposes of our first-degree burglary statute." *Id.* at 96, 825 S.E.2d at 720. The court found that "a storage building unattached to a residence and located on a separate parcel of land is not 'usually considered as a necessary appendage of a dwelling house.'" *Id.* at 96, 825 S.E.2d at 721 (quoting *State v. Evans*, 18 S.C. 137, 140 (1882)). Here, the court found the storage building is "separate from Victim's

dwelling" and appropriated to a distinct use, "as reflected by the commercial signage and Victim's storage of his business tools there." *Id.* The court further found "*there was no evidence* that the storage building was used as a dwelling or was in any way *'annexed to' or 'attached to'* the home," so the circuit court did not err in quashing the indictment. *Id.* (emphasis added).

The State filed a petition for a writ of certiorari posing questions (1) challenging the circuit court's authority to quash a facially valid indictment, and (2) asking whether the court of appeals erred in affirming the circuit court on fact-based grounds where the pretrial evidence showed the first-degree burglary charge was both "legally and factually appropriate." This Court granted the State's petition solely as to the second question.

## II. DISCUSSION

The State contends that, beyond the fact that the circuit court did not have the authority to quash a facially valid indictment on sufficiency-of-the-evidence grounds,[3] the court of appeals committed an error of law in affirming the circuit court's ruling on the merits. We agree.

The State notes defense counsel's challenge to the sufficiency of the evidence was an improper, fact-based challenge raised before the evidentiary phase of the trial had even begun, so the circuit court erred in the first instance by "addressing what functionally amounted to a pre-trial directed verdict motion and proceeding to analyze the sufficiency of the State's evidence supporting the first-degree burglary charge." However, even if a sufficiency-of-the-evidence analysis were somehow appropriate prior to the evidentiary phase of trial, the State asserts that, viewing the "limited evidence and testimony" it sought to introduce during the pretrial hearing in the light most favorable to the State,[4] the evidence presented in support of the first-degree burglary charge showed the building was well within 200 yards of and appurtenant to Callahan's residence and thus qualified as a "dwelling," so the charge

---

[3] Although the petition for a writ of certiorari was denied on this question, the State reiterates that the circuit court clearly erred in quashing a facially valid indictment. It acknowledges, however, that this argument was first raised in its Rule 29 motion and was likely precluded by error preservation rules.

[4] The State applies, by analogy, the standard used to evaluate the sufficiency of the evidence for purposes of a directed verdict motion at trial.

was "legally and factually appropriate," contrary to the decision of the court of appeals.

In support of its assertions, the State cites cases holding a burglary victim need not be the owner of the dwelling burglarized, and it argues ownership of the parcels is not determinative of whether a structure is appurtenant to a victim's residence. *See, e.g.*, *State v. Singley*, 392 S.C. 270, 274, 709 S.E.2d 603, 605 (2011) ("We have maintained consistently for well over one hundred years that burglary is a crime against possession and habitation, not a crime against ownership."); *id.* at 277, 709 S.E.2d at 606–07 ("It is instructive that our statutes do not define burglary in terms of who owns the property, but rather in light of who possesses it."). The State also cites cases holding certain outbuildings to be appurtenant to a victim's residence in a variety of factual settings. *See, e.g.*, *State v. Johnson*, 45 S.C. 483, 23 S.E. 619 (1896) (stating the undisputed fact that a fowl house was separated from a public roadway does not show that it was not appurtenant, as the only question is whether the structure is within the requisite distance and appurtenant thereto, the separation by a roadway is immaterial); *State v. Evans*, 18 S.C. 137 (1882) (observing a gin-house that was used to store cotton and to shelter stock was an appurtenance of the dwelling that was located eighty yards away).

Massey, in contrast, argues the court of appeals properly affirmed the circuit court's ruling quashing the indictment. Massey acknowledges "[a] person does not have to be the titled property owner to be a victim of burglary," but asserts "the question is whether the scope of the first-degree burglary statute includes parcels legally separate from the victim's dwelling." Massey contends the circuit court "properly recognized that an outbuilding cannot be appurtenant to a dwelling if it is situated on a distinct and separate parcel *owned by someone other than the victim*." (Emphasis added.) He notes none of the cases cited by the State involve the question of separate parcels, so they are not controlling here. Massey, however, also cites no authority directly on point, and he does not address the import of the court's (arguably factual) finding regarding the use of the building as a business. As noted previously, the circuit court's order on the Rule 29 motion ultimately cited the building's separate ownership and distinct use as grounds for quashing the indictment.

As an initial matter, we note multiple procedural irregularities have obstructed consideration of the singular issue that should have been the focus of the motion to quash the indictment. We will review these procedural points for the benefit of the parties in this appeal and to provide clarity in future cases.

A motion to quash an indictment tests only the facial validity of the indictment. *See* S.C. Code Ann. § 17-19-90 (2014) ("Every objection to any indictment for any defect *apparent on the face thereof* shall be taken by demurrer or on motion to quash such indictment before the jury shall be sworn and not afterwards." (emphasis added)). A motion to quash does not test the sufficiency of the State's evidence; the sufficiency of the evidence can properly be challenged only by a motion for a directed verdict following the State's presentation of its case at trial. *See generally Gibson v. United States*, 244 F.2d 32, 34 (4th Cir. 1957) (stating there is "no doubt" that the only question to be addressed in a pretrial challenge to an indictment is "not whether it was supported by the facts of the case, but whether it sufficiently charged a crime"); *Evans*, 18 S.C. at 138 (stating the question regarding the adequacy of the indictment "is not as to the facts proved, but as to the sufficiency of the allegations in the indictment").

In light of the foregoing, the only question that should have been addressed at the pretrial hearing was whether the first-degree burglary indictment set forth the necessary elements of the offense. *See* S.C. Code Ann. § 17-19-20 (2014) ("Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided."). Defense counsel effectively admitted at the pretrial hearing that the State's indictment was facially valid when he made his motion to quash and stated "the indictment that the [S]tate has provided *is correctly in line with the statute* but . . . *is faulty with regards to the facts of this case*." (Emphasis added.)

The State, however, did not contemporaneously challenge the circuit court's authority to quash a facially valid indictment based on the sufficiency of the facts. Rather, the discussion at the hearing devolved into an analysis of whether the burglarized building was appurtenant to the victim's residence and qualified as a dwelling. The State itself engaged in an evidentiary analysis in this regard, making a proffer of testimony from the victim, all before the jury was sworn. The State did not advance any argument regarding the circuit court's authority until it filed its Rule 29 motion. Consequently, we denied the petition for a writ of certiorari as to the State's first question because we agreed with the court of appeals that the issue was

waived by the State and was not preserved for appellate review.[5]   Moreover, the State effectively concedes in its brief to this Court that it failed to timely assert this challenge.  Thus, any issue regarding the circuit court's authority is not properly before the Court, so we shall turn our consideration to the issue on which we granted the State's petition.[6]

The State asserts that, even if a sufficiency-of-the-evidence analysis were somehow appropriate prior to trial, viewing the "limited evidence and testimony" it sought to introduce at the pretrial hearing in the light most favorable to the State, it showed the building was well within 200 yards of and appurtenant to Callahan's residence and, thus, qualified as a "dwelling," so the first-degree charge was "legally and factually appropriate."

Whether a structure is appurtenant to a dwelling is a factual question.  *See Johnson*, 45 S.C. at 489, 23 S.E. at 621 (stating a trial court may not "pass upon a question of fact, to wit, whether the [burglarized structure] was an appurtenance to the dwelling house").  The circuit court specifically asked the parties whether they believed this to be a factual issue and, hearing a response only from defense counsel, the court indicated it believed the issue to be legal.  Further adding to the uncertainty, however, the circuit court proceeded to rule (ostensibly as a matter of law) that the building was not a dwelling for purposes of a first-degree burglary charge, but then found the building was not "appurtenant to the residence owned by the victim's parents, *factually*," based on the evidence presented "thus far."  (Emphasis added.)

In our view, this dichotomy in the court's characterization developed because the General Assembly, while defining other related terms, has not defined "appurtenant" as used in section 16-11-10, and the parties offered varying opinions as to its meaning, but they also engaged in arguments regarding the use of the

---

[5] Although the issue regarding the circuit court's authority was not raised for the first time on appeal, as stated by the court of appeals, but in the State's Rule 29 motion, we agree that the issue was untimely asserted.

[6] The State acknowledged at oral argument that "authority" in this context does not implicate the circuit court's subject matter jurisdiction.  *See State v. Gentry*, 363 S.C. 93, 101, 610 S.E.2d 494, 499 (2005) (observing subject matter jurisdiction and the sufficiency of an indictment are two distinct concepts, as subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong, and "[c]ircuit courts obviously have subject matter jurisdiction to try criminal matters").

building, its location, and its ownership, all of which are questions of fact. *Compare Hopper v. Terry Hunt Constr.*, 383 S.C. 310, 314, 680 S.E.2d 1, 3 (2009) (stating the interpretation of a statute presents a question of law) *with Singley*, 392 S.C. at 278, 709 S.E.2d at 607 (stating whether a person has a "possessory interest in the dwelling burglarized is highly factual") *and Johnson*, 45 S.C. at 489, 23 S.E. at 621 (stating whether a structure is appurtenant is a question of fact).

While the definition of the statutory term "appurtenant" might present purely a question of law, the parties and the courts below have cited no authority directly on point, and we find whether a particular structure is appurtenant to a dwelling is inextricably intertwined with the facts of the case. Consequently, in this unique procedural posture, this case presents a mixed question of law and fact. *See Boggero v. S.C. Dep't of Revenue*, 414 S.C. 277, 280, 777 S.E.2d 842, 843 (Ct. App. 2015) (stating "[c]ertain situations involve a mixed question of law and fact"; "[s]tatutory interpretation is a question of law," but "whether the facts of a case were correctly applied to a statute is a question of fact, subject to the substantial evidence standard" (second alteration in original) (citations omitted)).

The circuit court issued a ruling predicated on limited facts elicited during a pretrial hearing, and then attempted to address what appears to be a novel issue of law using those limited facts. The State asserts the result was not unlike a ruling on a directed verdict, so it asks this Court to apply the standard for reviewing a directed verdict by analogy and to hold there was sufficient evidence—viewed in the light most favorable to the State—to support the indictment "legally and factually." *Cf. State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006) ("A defendant is entitled to a directed verdict when the [S]tate fails to produce evidence of the offense charged. When reviewing a denial of a directed verdict, this Court views the evidence and all reasonable inferences in the light most favorable to the [S]tate.").

This Court may pronounce the law without deference to the circuit court. *See S.C. Prop. & Cas. Ins. Guar. Ass'n v. Brock*, 410 S.C. 361, 365, 764 S.E.2d 920, 922 (2014) (stating, in a case involving "solely a question of statutory interpretation," that "[q]uestions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below."). However, this case does not involve solely a question of law, as any definition of appurtenant must be applied to the facts of the case to determine if a first-degree burglary charge is appropriate. Because this case involves a mixed question of law and fact, those facts will necessarily inform this Court's analysis. We cannot adequately analyze a novel question of law based on evidence that a party *might* have introduced at trial or consider whether the evidence supported a charge of first-degree burglary on an

incomplete record. *See generally Chestnut v. AVX Corp.*, 413 S.C. 224, 228, 776 S.E.2d 82, 84 (2015) ("The creation of a factual record will allow us to decide whether to adopt a 'no stigma damages rule[';] an 'all stigma damages rule[';] or a modified rule."); *Farmer v. CAGC Ins. Co.*, 424 S.C. 579, 588, 819 S.E.2d 142, 147 (Ct. App. 2018) ("As we have noted, a voluntarily dissolved business trust's amenability to suit may be a novel issue, which should not be decided on a motion to dismiss when further facts might add form and structure. As T.S. Eliot said: it is easy to carve a goose when there are no bones." (citation omitted)).

Although Massey asserts in his brief that, as a matter of law, the building "was not appurtenant to the dwelling because it was located on a different parcel of land owned by someone other than the victim," the fact that the parcel was *not owned by Callahan* is not determinative. *See Singley*, 392 S.C. at 274, 709 S.E.2d at 605 (stating "burglary is a crime against possession and habitation, not a crime against ownership"). Further, we disagree with Massey to the extent he more narrowly argues the case should be decided as a matter of law because the evidence that creates a question for the Court—that the outbuilding was on a legally separate parcel from the dwelling—was undisputed.[7] The separation of the parcels does not, standing alone, decide the issue of appurtenance. *Cf. Johnson*, 45 S.C. at 489, 23 S.E. at 621 (stating the undisputed fact that a fowl house was separated from a dwelling by a public roadway does not necessarily show that it was not appurtenant to a dwelling).

"Appurtenant" has multiple meanings, depending on the context and the statutory language, so any extensive pronouncements regarding the law of burglary should be arrived at upon due consideration of a complete record. While Massey focuses on the import of separate parcels, it has also been recognized that appurtenancy, a factual question, has been widely equated with use. *See* C.S. Parnell, *Burglary: outbuildings or the like as part of "dwelling house,"* 43 A.L.R.2d 831, 834–35 (1955) (observing the curtilage concept, which requires an outbuilding to lie within a common enclosure or wall, originated in England, and it has not met with general approval in America; thus, while some American authorities still use a version of this concept by relying on plats or the requirement that they be within sight of the dwelling, "the dominant factor used in a large group of American cases to test whether an outbuilding may be subject to burglary appears to be appurtenancy or use"; if the outbuilding "contributes materially to the comfort and convenience of habitation in the dwelling house, it will be considered a part of the dwelling house

---

[7] In its Rule 29 motion, the State itself indicated the outbuilding was on a separate parcel.

with respect to the law of burglary"); *cf. Unseld v. Kentucky*, 31 S.W. 263, 264 (Ky. 1910) ("The test is the use and proximity. It is no longer, as it was once thought to be, a matter of inclosure, or fence. Nor is it ever one of title.").

Both the circuit court and the court of appeals cited the alleged use of the building as a business (which Callahan disputed), along with separate ownership (parcels), as factors in deciding the building was not appurtenant to the residence as a matter of law. In our view, further development of the record as to use would certainly inform our analysis of the definition of the term appurtenant.

We also disagree with the court of appeals to the extent its opinion can be read to require an appurtenant structure to be *physically* attached to a dwelling. The court of appeals cited the definitions of "appurtenant" and "annex" in *Black's Law Dictionary* (10th ed. 2014) and combined this with an excerpt of an early decision of this Court, *Evans*, 18 S.C. at 140, to reach this conclusion. However, the excerpt in *Evans* was discussing the offense of common law burglary, not the statutory offense. The physical attachment to a dwelling is not a requirement under South Carolina's current burglary law. This point can be confirmed by reference to the statutory definition of a dwelling house in section 16-11-10. If outbuildings can be up to 200 yards from a residence (double the length of a 100-yard football playing field) and yet appurtenant at the same time, it is apparent that outbuildings need not be physically attached. *See* S.C. Code Ann. § 16-11-10 (defining dwelling house); *see also Johnson*, 45 S.C. at 490, 23 S.E. at 622 (holding the relevant considerations under the statute are whether a structure is within 200 yards of a dwelling and appurtenant thereto and noting whether the structure is separated from the dwelling is immaterial).

## III.  CONCLUSION

For all of the foregoing reasons, we conclude the court of appeals erred in upholding the circuit court's quashing of the indictment for first-degree burglary. Accordingly, we reverse the decision of the court of appeals and remand the matter to the circuit court for further proceedings.

**REVERSED AND REMANDED.**

**KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**